ST. VINCENT'S HOSPITAL, Petitioner,

v.

The NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 77–1027.

United States Court of Appeals, Third Circuit.

Argued Oct. 6, 1977.

Decided Dec. 15, 1977.

John S. Irving, Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Paul J. Spielberg, Deputy Asst. Gen. Counsel, Patrick Szymanski, N. L. R. B., Washington, D. C., for respondent.

Peter A. Somers, Lindabury, McCormick & Estabrook, P. A., Westfield, N. J., for petitioner.

Richard L. Epstein, K. Bruce Stickler, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for amicus curiae, American Hospital Ass'n.

Before GIBBONS and WEIS, Circuit Judges and STEEL, District Judge.[*]

## OPINION OF THE COURT

WEIS, Circuit Judge.

When the National Labor Relations Act was extended to health care institutions, one of the objectives was to avoid disruptions in patient care. Diagnosing fragmentation of bargaining units as a potential obstruction to that aim, congressional committees advised the National Labor Relations Board to prevent proliferation. In this appeal, we agree with a hospital's contention that the Board failed to heed that admonition. Accordingly, the Board's order will be set aside and enforcement denied.

The NLRB certified as an appropriate bargaining unit a group of four boiler operators employed by St. Vincent's Hospital in Montclair, New Jersey. After the hospital refused to recognize the union, the Board issued an order directing that collective bargaining take place.

The hospital has 112 beds and employs approximately 280 employees, 206 of whom work full-time. In addition to the four boiler operators, the hospital has three other employees in the maintenance department, 30 in housekeeping and laundry, and 28 in the dietary department. There are 30 nurse's aides, 20 licensed practical nurses, and ten technicians in addition to registered nurses and clerical personnel.

The petitioner union originally sought to represent a unit consisting of the boiler operators and three other maintenance employees. The boiler men are licensed by the State of New Jersey but perform the usual functions of stationary engineers such as checking gauges and water levels, cleaning the boiler rooms and performing minor repairs. The Board's regional director found that there was not a sufficient community of interest between the two employee groups and certified only the boiler operator unit.

The Board agreed with the regional director on the basis of its "traditional standards which have long recognized that units of licensed boiler room employees may constitute a separate appropriate unit," citing *New England Confectionery Co.,* 108 N.L.R.B. 728 (1954). The majority of the Board did not discuss the congressional statement which accompanied the 1974 amendments to the National Labor Relations Act, although it was referred to in a concurring opinion. St. Vincent's asserts that the Board's recognition of the small, separate unit was contrary to the expressed intention of Congress and should not be enforced.

■ Section 9(b) of the National Labor Relations Act, 29 U.S.C. § 159(b) authorizes the Board to designate an appropriate unit for collective bargaining. The statute con-

tains few restrictions on the Board's discretion and courts rarely disturb its determinations, *Packard Motor Car Co. v. NLRB,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947), unless they exceed the Board's power. Nevertheless, it remains for the courts to insure that the exercise of the agency's discretion is not unreasonable, arbitrary, or in conflict with congressional intent. *Memorial Hospital of Roxborough v. NLRB,* 545 F.2d 351 (3d Cir. 1976). Moreover, the Board must disclose the reasons for a decision which is inconsistent with its prior rulings. *Id.* at 357.

In 1947 the Taft-Hartley Act amended § 2(2) of the National Labor Relations Act, 29 U.S.C. § 152(2), to exempt nonprofit hospitals from coverage under the Act. Growing unrest among employees in the health care field caused Congress to reconsider its position and in 1974 new amendments were enacted which extended the statute's coverage to a large number of workers in nonprofit hospitals and similar institutions.[1]

The House and Senate committees considering legislation to remove the exemption became concerned with a hiatus in patient care which could be caused by jurisdictional disputes and strikes for recognition. The committee members recognized that disruption of patient treatment is a far more serious concern than a break in an industrial plant's production. In addition to the importance of uninterrupted service, they were aware of the impracticability of inventorying health care.

With the distinctive problems of the health care field in mind, various proposals were introduced to eliminate the exemption and also to establish substantial safeguards against undue disruption. A bill offered by Senator Taft, S. 2292, 93d Cong., 1st Sess. (1973), would have prevented the Board from designating more than four bargaining units in health care institutions. However, after some negotiation, it was decided to enact S. 3203, 93d Cong., 2d Sess. (1974), a compromise between Taft's previous bill and other proposals which did not contain specific restrictions. Agreeing that patients' welfare might be adversely affected by disputes over bargaining units, the committees addressed the problem by means of a statement incorporated in both House and Senate reports using the form of a directive to the Board:

> "Due consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry. In this connection, the Committee notes with approval the recent Board decisions in *Four Seasons Nursing Center,* 208 NLRB No. 50, 85 LRRM 1093 (1974), and *Woodland Park Hospital,* 205 NLRB No. 144, 84 LRRM 1075 (1973), as well as the trend toward broader units enunciated in *Extendicare of West Virginia,* 203 NLRB No. 170, 83 LRRM 1242 (1973).[1]
>
> [1] By our reference to *Extendicare,* we do not necessarily approve of all of the holdings of that decision."

S.Conf.Rep. No. 988, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 3946, 3950; S.Rept. No. 766, 93d Cong., 2d Sess. 5 (1974); H.Rept. No. 1051, 93d Cong.2d Sess. 7 (1974). In the decisions cited in the committee reports the Board included health care employees with related skills and duties in comprehensive units.[2]

Senator Taft was co-manager of the bill, and in introducing it on the Senate floor, commented on the broad support from labor organizations and health care institutions as well as from senators who endorsed the bill and report language. He expressed concern for the proliferation of bargaining units in health care institutions particularly

---

1. *See generally* Vernon, Labor Relations in the Health Care Field Under the 1974 Amendments to the National Labor Relations Act: An Overview and Analysis, 70 Nw.L.Rev. 202 (1975).

2. In *Four Seasons Nursing Center,* the Board had refused to certify a bargaining unit of three maintenance employees, and in *Woodland Park*

*Hospital,* a petition for a separate unit of x-ray technicians was dismissed. The Board approved a unit of service, maintenance and technical employees in *Extendicare of West Virginia* in order to avoid "unwarranted unit fragmentation." 203 N.L.R.B. 1232, 1233 (1973).

in view of their numerous job classifications and the diversified nature of services furnished. Noting that the Board should have some flexibility he said:

"I cannot stress enough, however, the importance of great caution being exercised by the Board in reviewing unit cases in this area. Unwarranted unit fragmentation leading to jurisdictional disputes and work stoppages must be prevented.

The administrative problems from a practical operation viewpoint and labor-relation viewpoint must be considered by the Board on this issue. Health-care institutions must not be permitted to go the route of other industries, particularly the construction trades, in this regard.

In analyzing the issue of bargaining units, the Board should also consider the issue of the cost of medical care.

The committee, in recognizing these issues with regard to bargaining unit determination, took a significant step forward in establishing the factor of public interest to be considered by the Board in unit cases." 120 Cong. Rec. 12944–45 (1974).

Congressman Ashbrook, a co-sponsor of the legislation in the House, discussing the conference report accompanying S. 3203 after legislation had been approved by the House, again acknowledged that the committee was concerned with "the issue of undue proliferation of bargaining units and by language in the committee report has stressed the need for the Board to curtail such proliferation in health care institu-

tions." 120 Cong.Rec. 22949 (1974). Senator Williams reiterated the committee's admonition and Congressman Thompson described the cited prior NLRB decisions as reflecting "the statutory mandates," though both he and Senator Williams stated that the Board should exercise its specialized expertise in determining appropriate units.[3] 120 Cong.Rec. 22575 (1974); 120 Cong.Rec. 22948 (1974). In view of the attention devoted to it during the committee reports and floor discussion of the amendments, Congress obviously attached much importance to the unit proliferation problem.

Less than a year after passage of the amendments, in a group of consolidated bargaining unit cases in the health care field,[4] the Board acknowledged the congressional directive. In *Mercy Hospitals of Sacramento, Inc.,* the Board commented: "Thus our consideration of all issues concerning the composition of appropriate bargaining units in the health care industry must necessarily take place against this background of avoidance of undue proliferation." 217 N.L.R.B. 765, 766 (1975). A unit of all service and maintenance employees was found to be appropriate in the absence of any request for review of the regional director's decision. A similar unit was approved in *Barnert Memorial Hospital* and in *St. Catherine's Hospital of Dominican Sisters.* In *Newington Children's Hospital,* the service and maintenance employees unit certified included nurse's aides, housekeeping, dietary, maintenance, engineering, photography and other employees but excluded licensed practical nurses.[5]

---

**3.** We believe that the remarks of Senator Williams and Congressman Thompson, offered in their explanations of the conference report should not be read to minimize the deep concern expressed in both committee reports before passage of the measure, reiterated in the floor debates and included in the conference report that proliferation of the bargaining units should not be permitted. *See* Vernon, Labor Relations in the Health Care Field, *supra* at 208 n.43.

**4.** *Mercy Hosps. of Sacramento, Inc.,* 217 N.L.R.B. 765 (1975), *Nathan and Miriam Barnert Memorial Hosp. Ass'n,* 217 N.L.R.B. 775 (1975),

*St. Catherine's Hosp. of Dominican Sisters, Inc.,* 217 N.L.R.B. 787 (1975), *Newington Children's Hosp.,* 217 N.L.R.B. 793 (1975), *Duke Univ.,* 217 N.L.R.B. 799 (1975), *Mt. Airy Foundation,* 217 N.L.R.B. 802 (1975), *Shriners Hosps. for Crippled Children,* 217 N.L.R.B. 806 (1975).

**5.** There is some indication in the legislative history that the reservations expressed about *Extendicare of West Virginia* were directed to the Board's decision to exclude licensed practical nurses from a bargaining unit of technical, service and maintenance employees. *See St. Catherine's Hospital, supra* at 788.

The Board rejected a petition for representation of five stationary engineers in *Shriners Hospitals.* Although it recognized that under ordinary circumstances similar units had been approved in other industries, the Board stated that ordinary circumstances do not exist in the hospital field. The majority concluded:

> "It is in the context of the peculiar nature of the industry and the congressional mandate against the proliferation of bargaining units that we have weighed all of the criteria traditionally considered when making a unit determination and have, on balance, concluded that it is proper to place special significance on the high degree of integration of operations performed throughout a health care facility.
>
> Were we to adopt the rationale applied by our dissenting colleagues, we could be faced with requests to find appropriate dozens of separate units of employees performing diverse professional, technical, and service and maintenance functions in an industry which, by its very nature, requires great numbers of employees in a myriad of classifications all ultimately involved in providing patient care. We shall not do so, because such an approach can only lead to an undue fragmentation of bargaining units in the health care industry which would totally frustrate congressional intent." 217 N.L.R.B. 806, 808 (1975).

Subsequently, in *Jewish Hospital Association,* 223 N.L.R.B. 614 (1976), the Board rejected a bargaining unit composed only of engineering employees and approved one composed of all maintenance and service personnel.

We consider these statements to be correct expressions of the law properly recognizing the considerations to be applied by the Board. We are unable to reconcile the decisions and their rationale with the result reached in the case *sub judice.*

The Board seemingly was impressed by the facts that the boiler operators at St. Vincent's were licensed by the state, they spent most of their time in the boiler room where there was little contact with other hospital personnel and there was little interchange with other employees. The Board decided to apply traditional standards which recognize that licensed boilermen may constitute a separate appropriate unit.

The legislative history of the health care amendments, however, makes it quite clear that Congress directed the Board to apply a standard in this field that was not traditional. Proliferation of units in industrial settings has not been the subject of congressional attention but fragmentation in the health care field has aroused legislative apprehension. The Board therefore should recognize that the contours of a bargaining unit in other industries do not follow the blueprint Congress desired in a hospital.

■ The fact that the boiler room employees are licensed by the state is not per se persuasive of separate treatment. The same kinds of duties apparently were performed by the engineers in the *Jewish Hospital Association, Mercy Hospital, Barnert Memorial Hospital,* and *Shriners Hospitals* cases also. The fact that a state may choose to license a particular occupation should not be controlling in the determination of an appropriate bargaining unit; otherwise, the development of a uniform national labor policy would be frustrated by undue reliance on the vagaries of state law.

Similarly, the factors of amount of contact between workers, separate immediate supervision, and the special skills of certain crafts must be put in balance against the public interest in preventing fragmentation in the health care field. A mechanical reliance on traditional patterns based on licensing, supervision, skills and employee joint activity simply does not comply with congressional intent to treat this unique field in a special manner.

In certifying a unit of boiler operators only, the Board did not heed the congressional admonition nor follow its own cases [6]

---

**6.** A review of bargaining unit cases for maintenance and service employees after the health care amendments demonstrates that the Board's implementation of congressional policy

which had observed the directive. Consequently, its order will not be enforced. The Hospital's petition to review and set aside the Board's order will be granted. The Board's cross application for enforcement will be denied.

against fragmentation has not always been consistent. *Compare* Shriners Hosps. for Crippled Children, *supra* (rejecting unit of stationary engineers separate from service and maintenance employees), *and* Jewish Hosp. Ass'n, *supra* (rejecting unit of engineering department workers, including powerhouse and maintenance employees, separate from other service employees, but permitting exclusion of technical employees), *and St. Joseph Hosp.*, 224 N.L.R.B. 270 (1976) (rejecting unit of maintenance and engineering department employees, including 10 licensed stationary men, separate from service and maintenance workers), *and Northeastern Hosp.*, 230 N.L.R.B. No. 162 (July 21, 1977) (rejecting separate maintenance unit), *with West Suburban Hosp.*, 224 N.L.R.B. 1349 (1976) (rejecting separate unit of maintenance mechanics but approving maintenance department unit, including boiler operators and stationary engineers), *and Eskaton Am. River Healthcare Center*, 225 N.L.R.B. 755 (1976) (approving maintenance mechanic unit separate from maintenance employees), *and Mercy Center for Health Care Servs.*, 227 N.L.R.B. No. 265, 1976–1977 CCH NLRB Dec. ¶ 17,828 (approving separate unit of five stationary engineers), *and Hebrew Rehabilitation Center for the Aged*, 230 N.L.R.B. No. 35, 1977–1978 CCH NLRB Dec. ¶ 18,275 (approving unit of maintenance employees but excluding service and elevator operators).