**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HMO INTERNATIONAL/CALIFORNIA MEDICAL GROUP HEALTH PLAN, INC., Respondent.**

No. 79–7083.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1980.

Submission Ordered Vacated
Oct. 21, 1980.

Ordered Resubmitted Nov. 19, 1980.

Decided June 2, 1982.

Rehearing and Rehearing En Banc
Denied Sept. 27, 1982.

Susan L. Dolin, Washington, D. C., argued, for petitioner; Elliott Moore, Washington, D. C., on brief.

Stefan M. Mason, Munger, Tolles & Rickershauser, Los Angeles, Cal., argued, for respondent; Howard Knee, Beverly A. Stuart, Los Angeles, Cal., on brief.

Before WALLACE, KENNEDY and FERGUSON, Circuit Judges.

KENNEDY, Circuit Judge:

This is an application to enforce an order of the NLRB requiring respondent HMO International [HMO] to cease and desist from unfair labor practices and to bargain with the California Medical Registered Nurses Association, United Nurses Association of California [UNAC]. UNAC represented a unit composed of all registered nurses at HMO's many California facilities.

In this court, HMO's response to the petition is that the bargaining unit was constituted too narrowly, contrary to the law applicable to health facilities. HMO argues that the unit should have included licensed vocational nurses [LVNs] in addition to registered nurses [RNs].

HMO employs about 90 RNs and 30 LVNs at 19 California facilities. The LVNs are within a bargaining unit that includes other clerical and technical job categories. The representative for this larger unit is the Service Employees International Union [SEIU]. The particular RNs and LVNs in question are similar in some respects and different in others; the former job category generally involves more education, prestige, responsibility, etc. than the latter, but neither the similarities nor the differences are compelling on their face. The record reveals that, as to the functions of the two groups of specific employees in question, they are virtually identical.

In March, 1978, following a representation election, UNAC was certified as the representative for a unit of RNs only, and HMO refused to bargain.[1] A complaint against HMO was issued in May, 1978, and in September, 1978, the NLRB granted summary judgment against HMO because the appropriateness of the bargaining unit had been fully litigated in proceedings from December, 1977, to February, 1978, preceding the election. Therefore, HMO's refusal to bargain was held an unfair labor practice in violation of section 8 of the National Labor Relations Act [NLRA], 29 U.S.C. § 158 (1976).

From this order, the Board petitions our court for enforcement.

In deciding whether HMO's refusal to bargain violated the NLRA, or was on the contrary justified because the bargaining unit was defined too narrowly, three questions must be answered.

1.  What deference is to be paid to the NLRB's unit definition?

2.  Did the Board apply the law correctly in upholding the definition of the RN-only unit?

3.  If the Board did not apply the correct legal standard, may the order be enforced because a correct interpretation of the NLRA would have permitted certification of the RN-only unit in any event?

Before these questions can be answered individually, the background and import of the 1974 National Labor Relations Act Amendments must be discussed in a general way.

---

1.  This is generally the only way an employer can obtain judicial or administrative review of a bargaining unit determination. *See Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 91 S.Ct. 599, 27 L.Ed.2d 735 (1971) (administrative review); *Spring City Knitting Co. v. NLRB*, 647 F.2d 1011, 1013 n.1 (9th Cir. 1981) (judicial review).

Congress amended the NLRA in 1974 to cover nonprofit hospitals. In so doing, the legislature extended the protection of the Act to health care workers, but it insisted as well that recognition be given to the particular dangers that the public faced from potential disruption of health care services. One potent way to minimize disruption, Congress found, was to avoid the proliferation of bargaining units characteristic of other trades and resulting from the NLRB's traditional approach to defining units, the community-of-interest analysis, according to which homogeneity among the job descriptions within a bargaining unit is paramount. Broader units mean fewer units, and by allowing fewer units Congress sought to provide fewer occasions for work interruptions.

The committee reports of both the House and Senate admonished that "[d]ue consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry."[2] This legislative purpose is remarkable and important in that the Board is directed to consider a public interest factor in the settling of private labor disputes; this purpose makes it even more important that the Board develop a reasoned, non-conclusory method of implementing the statutory intent by articulation of specific criteria.[3]

■ Because this legislative commitment to nonproliferation is explicit in the legislative history leading to the repeal of the prior exemption, it is binding on the NLRB and must be implemented by it. So our court has expressly held, in a decision which examines the pertinent history. *See NLRB v. St. Francis Hospital of Lynwood*, 601 F.2d 404, 411–12 (9th Cir. 1979).

The policy does not include specific guidelines. It is not stated how many units may be tolerated in a given facility without trenching on "proliferation." Senator Taft proposed an archetypical limitation of four units per facility, the units to be divided along the lines of professional, technical, clerical, and service and maintenance. These divisions were not enacted, and it is not clear whether they were thought to be too broad, too narrow, or merely too rigid. What is clear, however, is that the Board is required to develop explicit criteria for affirmative implementation of the nonproliferation policy in health care facilities. This it has not done. In *St. Francis Hospital*, we defined the inquiry which the NLRB must pursue as "focusing upon the disparity of interest between employee groups which would prohibit or inhibit their representation of employee interests." 601 F.2d at 419.

The Board's treatment of RN units is instructive in this respect. Having abandoned its earlier presumption in favor of RN-only units, the Board reverted to the traditional community-of-interest analysis,[4] still heedless of the requirement that it develop a distinct approach responsive to

**2.** House Comm. on Educ. and Labor, Coverage of Nonprofit Hospitals Under the National Labor Relations Act, H.R.Rep.No.1051, 93d Cong., 2d Sess. 6 (1974); S.Comm. on Labor and Pub. Welfare, Coverage of Nonprofit Hospitals Under the National Labor Relations Act, S.Rep.No.766, 93d Cong., 2d Sess. 5, *reprinted in* [1974] U.S.Code Cong. & Ad.News 3946, 3950.

The significance of these amendments has been widely discussed. *See* Bumpass, *Appropriate Bargaining Units in Health Care Institutions: An Analysis of Congressional Intent and Its Implementation by the National Labor Relations Board*, 20 B.C.L.Rev. 867 (1979); Fehely, *Amendments to the National Labor Relations Act: Health Care Institutions*, 36 Ohio St.L.J. 235 (1975); Vernon, *Labor Relations in the Health Care Field Under the 1974 Amendments to the National Labor Relations Act: An Overview and Analysis*, 70 Nw.U.L.Rev. 202 (1975); Comment, *National Labor Relations Act—History and Interpretation of the Health Care Amendments*, 60 Marq.L.Rev. 921 (1977); Note, *Registered Nurse Bargaining Units: Undue Proliferation?* 45 Mo.L.Rev. 348 (1980).

**3.** *See* Comment, *supra* note 2, 60 Marq.L.Rev. at 922. *See generally*, Bernstein, *The NLRB's Adjudication-Rule Making Dilemma Under the Administrative Procedure Act*, 79 Yale L.J. (1970); Getman & Goldberg, *The Myth of Labor Board Expertise*, 39 U.Chi.L.Rev. 681 (1977).

**4.** *See, e.g.*, Mount Airy Foundation, 253 N.L. R.B. No. 139, slip op. at 11–12 (1981); Newton-Wellesley Hosp., 250 N.L.R.B. No. 86, p. 409 (1980).

the congressional mandate to attend carefully to a particular public interest, *i.e.*, minimizing disruptions of health care service delivery. It is ironic that the Board's community-of-interest analysis became even more mechanical and categorical after the 1974 Amendments.[5] This has in turn led to a nearly perfect record of reversals of the NLRB by the Court of Appeals in review of health care bargaining units.[6]

### 1. *Appropriate Standard of Review*

■ The Board's unit decisions ordinarily will not be overturned absent an abuse of discretion. *See, e.g., Beck Corp. v. NLRB*, 590 F.2d 290, 292–93 (9th Cir. 1978) (per curiam):

The issue of unit determination is within the particular expertise of the Board, vested in that body by statute, and a Board decision is rarely disturbed. Hence, judicial intervention should be confined to instances where there has been an abuse of discretion. It is not necessary that the Board choose the most appropriate bargaining unit; it is sufficient if the unit chosen is within the range of units appropriate under the circumstances.

(Citations omitted). This deference is not appropriate, however, when the Board has ignored a controlling legal standard. That has occurred in this and similar cases. The Board has repeatedly tried to follow a traditional community-of-interest analysis in spite of the mandate to consider the

public interest of nonproliferation in the health care industry. The Board has openly refused to follow the interpretation of the Amendments handed down by the U. S. Court of Appeals. *See Allegheny General Hospital v. NLRB*, 608 F.2d 965, 968–70 (3d Cir. 1979) (NLRB refused to follow relevant Third Circuit precedent because NLRB "respectfully disagrees" with Court of Appeals). Alternatively, the Board claims its refusal to follow the interpretation of the Amendments as they bear upon bargaining unit definition is a disagreement over mere "semantics," and therefore presumably inconsequential.[7]

### 2. *Did the Board Apply the Law Correctly Here?*

In *St. Francis Hospital*, the Board was reversed by the Ninth Circuit because the Hearing Officer, as affirmed by the Board, excluded evidence offered by the employer going to the nonproliferation issue, and because the Board explicitly applied an incorrect interpretation of the Amendments, to the effect that units composed of RNs only, to the exclusion of other professional employees, were presumptively appropriate.

■ In this case, it is suggested by the Board that no such presumption was employed and that evidence of the need for a larger unit was permitted to be offered by the employer. On the other hand, there is no indication in either the Brief or the Record that the Regional Director or the

---

5. *See Nathan & Miriam Barnert Memorial Hosp. Ass'n*, 217 N.L.R.B. No. 132, pp. 775, 784 ·86 (1975) (Kennedy and Penello, Members, dissenting) (criticizing majority's reliance on licensing).

6. *See Presbyterian/St. Luke's Medical Center v. NLRB*, 653 F.2d 450 (10th Cir. 1981) (enforcement denied); *Mary Thompson Hosp., Inc. v. NLRB*, 621 F.2d 858 (7th Cir. 1980) (enforcement denied); *Allegheny Gen. Hosp. v. NLRB*, 608 F.2d 965 (3d Cir. 1979) (enforcement denied); *NLRB v. Mercy Hosp. Ass'n*, 606 F.2d 22 (2d Cir. 1979) (enforcement denied), *cert. denied*, 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 248 (1980); *NLRB v. Sweetwater Hosp. Ass'n*, 604 F.2d 454 (6th Cir. 1979) (enforcement granted); *NLRB v. St. Francis Hosp. of Lynwood*, 601 F.2d 404 (9th Cir. 1979) (enforcement denied); *Bay Medical Center, Inc. v.*

NLRB, 588 F.2d 1174 (6th Cir. 1978) (enforcement granted); *NLRB v. West Suburban Hosp.*, 570 F.2d 213 (7th Cir. 1978) (enforcement denied); *St. Vincent's Hosp. v. NLRB*, 567 F.2d 588 (3d Cir. 1977) (enforcement denied); *Long Island Col. Hosp. v. NLRB*, 566 F.2d 833 (2d Cir. 1977) (enforcement denied) (Friendly, J.), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978); *Memorial Hosp. of Roxborough v. NLRB*, 545 F.2d 351 (3d Cir. 1976) (enforcement denied).

7. *Compare Newton-Wellesley Hosp.*, 250 N.L.R.B. No. 86, pp. 409, 411 (1980) ("[Ninth Circuit's] disagreement with our approach may be largely semantic") *with Presbyterian/St. Luke's Hosp.*, 653 F.2d at 457 n.6 (criticizing *Newton-Wellesley*).

Board gave any weight to the nonproliferation policy as expressed by the several circuit decisions cited above.[8] More particularly, neither the regional director nor the Board applied the "disparity of interest" test mandated by our decision in *St. Francis Hospital.* The employer made the nonproliferation argument in support of its request for a joint LVN/RN unit, and it was a serious administrative error to decline to evaluate this claim in adequate and specific terms.

### 3. Can the Bargaining Unit be Upheld Under a Correct Interpretation of the Law?

In spite of the fact that this unit's definition rests on misapplication of the law, is the scope of the unit sufficiently broad that it can also be sustained on a correct interpretation?

The Board's position in this case is somewhat different from that in other instances in which it has impermissibly ignored the nonproliferation mandate. All the relevant circuit court decisions have criticized the Board for certifying a bargaining unit that is wholly within one broad type but not comprehensive, *e.g.*, RNs but not other professionals. This was the case in *St. Francis Hospital,* in which the other professionals were relegated to a "residual professionals" unit. It is often the case that RNs are considered professionals and LVNs technicals.[9] However, Congress rejected such specific categories in favor of a more basic

principle prohibiting proliferation. It is likely that rejection was based on a perceived need for flexibility according to which more than four units might be appropriate for very large employers with highly diverse personnel, while fewer might be necessary for health care providers with smaller or more homogeneous work forces.

A separate theory under which the unit may eventually and legitimately be found appropriate is based on sections 2(12) and 9(b)(1), 29 U.S.C. §§ 152(12), 159(b)(1) (1976), in that RNs are professionals and thus may not be included in a unit with LVNs without the consent of the former.[10]

The possibility that the order to bargain, and the bargaining unit on which it rests, may be fortuitously consistent with the nonproliferation policy of the 1974 Amendments might be thought to argue for granting the petition for enforcement.[11] Nevertheless,

> it is also a familiar appellate procedure that where the correctness of the lower court's decision depends upon a determination of fact which only a jury could make but which has not been made, the appellate court cannot take the place of the jury. Like considerations govern review of administrative orders. If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirm-

---

8. The relevant portions of the decisions of the hearing examiner are set out below as an appendix to this opinion. The record shows that with respect to duties, hiring and staffing policies, benefits, etc., the treatment of RNs and LVNs at the facilities in question is "nearly identical." RNs are paid more, and California's requirements for their training and licensing are stricter. *See* Appendix *infra.* It is apparent that the only mention of the nonproliferation mandate was an interpretive gloss placed on an NLRB decision, the principle of which has been judicially invalidated for failure to implement congressional intent. *Id.*

9. *See National Medical Convalescent of San Diego,* 254 N.L.R.B. No. 163, slip op. at 11–17 (1981); *Family Doctor Medical Group,* 226 N.L.R.B. No. 22, p. 118 (1976); *Newington Chil-*

*dren's Hosp.,* 217 N.L.R.B. No. 134, p. 793 (1975); *St. Catherine's Hosp. of Dominican Sisters of Kenosha, Wisconsin, Inc.,* 217 N.L.R.B. No. 133, p. 787 (1975); *Nathan and Miriam Barnert, supra* note 5.

10. *See Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958); *Sonotone Corp.,* 90 N.L.R.B. No. 178, p. 1236 (1950).

11. *Cf. Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 413–16, 91 S.Ct. 814, 822–24, 28 L.Ed.2d 136 (1971) (district court on remand must determine whether Secretary, in spite of having misinterpreted law, acted within the scope of his authority nevertheless and whether his decision was within range of statutorily permissible choices).

ing no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency. *SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). If there is a reasonable possibility that application of the correct rule would produce a different result, a remand to the agency is appropriate.[12] This is all the more important when the court relies on an agency to develop, over time, workable rules for implementing a congressional policy. Based on the lack of attention to both the proper public interest standard embodied in the nonproliferation mandate and the legally significant aspects of the particular employees covered here, as opposed to the Platonic concepts of Registered Nurses and Licensed Vocational Nurses in the abstract,[13] we cannot say the result would be the same if the Board had applied the relevant law.

The purported professional status of the RNs for purposes of sections 9(b)(1) and 2(12) is likewise not *eo ipso* dispositive, for two reasons. First, that classification must be based not on an abstract generic classification, but rather on a concrete analysis of the duties of the particular employees in question.[14] Second, even if these RNs are appropriately found to be professionals in the meaning of 2(12), they may be included with LVNs after a *Sonotone* election.[15]

█ In light of the fact that LVNs are in the SEIU unit and the only differences

---

**12.** *See* Friendly, *The "Limited Office" of the Chenery Decision*, 21 Ad.L.Rev. 1 (1968); Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 199.

**13.** The ALJ's reliance in this case, which is typical of NLRB analysis, on such traditional and generalized factors as licensing and bargaining history, *see* note 8 *supra*; Appendix *infra*, is not adequate, *see St. Francis Hosp. of Lynwood*, 601 F.2d at 420.

"Professional" is not a rigid category, either for section 9(b) or section 9(b)(1)/2(12) purposes, but rather it should be determined by what the particular employees really do for the employer. *See, e.g., Middlesex Gen. Hosp.*, 239 N.L.R.B. No. 116, p. 837 (1978) (although laboratory technologists generally considered professionals, they would not be in given case because of employer's staffing and personnel policies); note 14 *infra*.

*See* Bumpass, *supra* note 2, 20 B.C.L.Rev. at 908–14; note 8 *supra*; Appendix *infra*.

**14.** This was established in *Chrysler Corp.*, 154 N.L.R.B. No. 28, pp. 352, 354 (1965):

It is clear, from examination of the statutory definition [of section 2(12)], that the resolution of this question [whether certain employees are professionals] turns on the nature of the work engaged in by the employees involved. ... [W]hen a group of employees are being evaluated to determine whether they are professionals, the principal test depends not so much on the individual qualifications of each employee as on the predominant character of the work in which they are engaged.

(Footnote omitted).

*See Lutheran Ass'n for Retarded Children*, 218 N.L.R.B. No. 195, p. 1278 (1975) (where LVN and RN categories functionally similar and employer uses them interchangeably, both will be put in same unit but RNs will ballot separately according to *Sonotone*); *Maple Shade Nursing Home*, 228 N.L.R.B. No. 188, pp. 1457, 1458 n.5 (1977) (even under traditional community-of-interest test, RNs and LVNs may be put in same unit). In *Family Doctor*, based on findings nearly identical to those in the record here, the Board granted the petitioner's request to represent a unit combining LVNs and RNs. 226 N.L.R.B. at 121. A fortiori such mixed units should be given serious consideration under a nonproliferation standard.

We believe it is significant that the facilities in question here are outpatient facilities, *see* Appendix *infra*, and we thus disapprove any minimizing of this factor based on *Memorial Clinic, Ltd.*, 220 N.L.R.B. No. 217 (1975).

Conversely, LVNs, who are ordinarily considered technicals, may not be in specific cases again depending on the sort of work that they do, even under the traditional community-of-interest analysis. *See Children's Hosp. of Pittsburgh*, 222 N.L.R.B. No. 90, pp. 588, 590–91 (1976).

We believe the Board's *Chrysler* decision is a model of the sort of analysis of the professional issue, with respect both to section 9(b) and 9(b)(1)/2(12), that is appropriate in health care cases. *See* note 13 *supra*; note 15 *infra*.

**15.** *Sonotone Corp.*, 90 N.L.R.B. No. 178, p. 1236 (1950).

While it is true that in the usual case the *Sonotone* issue arises only when the union seeks to represent a mixed unit, or when the Board decides to combine two classes based on the community-of-interest test, nevertheless, in health care cases there is a special mandate for the NLRB to consider the use of this device to comply with congressional intent.

between the RNs and the LVNs are of the questionable sort,[16] on remand the Board or fact finder must make various points clear. With respect to the 9(b)(1) and 2(12) issue, these would include an explanation of why the specific tasks performed by the respondent's employees and the particular personnel policies of the employer mandate a professional classification for RNs and not for LVNs, or a technical classification for LVNs and not for RNs, and further, why the RNs should not be preliminarily certified in the same unit as the LVNs with the proviso of a *Sonotone* election.

With respect to the more general 9(b) issue of appropriate unit definition, the Board must state in precise terms how it proposes to modify its traditional community-of-interest analysis so that the congressional mandate for nonproliferation of bargaining units in the health care setting will be implemented in this case.[17]

Our holding should not be taken to imply that a separate unit for RNs is necessarily suspect; we simply are in no position to review compliance with the statute absent a legal and factual analysis by the NLRB of the nonproliferation issue. To the extent this remand is an unfortunate postponement of the employees' acquisition of representation which is their right, the cause for it must be traced to the Board. By openly adopting a posture of noncompliance with the will of Congress as bindingly interpreted by the Court of Appeals, the Board delays extension of NLRA protection to a large class of employees.[18]

16. *See* notes 8 & 13 *supra.*

17. There are no fact findings here to justify the separation of LVNs and RNs, on either 9(b) or 9(b)(1)/2(12) grounds. *See* notes 8 & 13 *supra* ; Appendix *infra.*

The NLRB has ordered RN/LPN units with the consent of the former, and in health care cases there should be in the record a statement of reasons why this is not appropriate. *See, e.g., Maple Shade, supra* note 14.

Separate bargaining units in the health care field must be justified in terms of a disparity that *precludes* combination, not an internal consistency within a class that could *justify* separation. *See Presbyterian/St. Luke's Hosp.,* 653 F.2d at 457 n.6; *Mary Thompson Hosp.,*

The Petition for Review is GRANTED, the Petition to Enforce is DENIED, and the case is REMANDED to the Board.

## APPENDIX

The record establishes that the Employer employs both RNs and LVNs at each of its facilities. A nurse (RN or LVN) is assigned to each doctor based upon the experience of the nurse in the specialty area in which the doctor practices. When a vacancy occurs, a nurse is hired based upon her experience in the specialty, rather than whether she is an RN or a LVN. The nurses' major functions are to assist the doctors. Thus, the nurses escort the patients to waiting rooms where they take patients' histories and vital signs. The nurses then assist the doctors in the examination or treatment. The nurses are under the same basic supervision and can substitute for each other during vacations.

The record also establishes that the benefits received by the RNs including sick leave, health and welfare and vacations, are the same as those received by the LVNs and other job classifications covered by an existing collective-bargaining agreement discussed, *infra.* The rates of pay for the various classifications do differ and the RNs receive a higher rate of pay than the LVNs. The same employee manual is given to all the employees who work for the Employer.

The educational background requirements for the RNs and LVNs are different and are set by state law. The LVNs

621 F.2d at 864, *St. Francis Hosp. of Lynwood,* 601 F.2d at 419. Another way of saying this is that the ALJ and Board must make clear to the reviewing court the definite *manner* in which they are implementing the nonproliferation mandate. *West Suburban Hosp.,* 570 F.2d at 216.

18. Because of the order of issues voted on in a *Sonotone* election, we do not find it controlling that RNs rejected SEIU representation in 1976. *See, e.g., Family Doctor,* 226 N.L.R.B. at 121. Although it is possible that the number of units may not change even if the RNs and LVNs are combined, we cannot now ascertain this.

must complete two years of schooling at a vocational school while the RNs must complete four years of schooling at an accredited nursing college. The nurses in both classifications then must pass a state administered examination and the examinations for each are different. The state requirements for licensure for RNs are more stringent than for LVNs. Based upon the above and the record as a whole, I find that the RNs are professional employees. *Mercy Hospitals of Sacramento, Inc.*, 217 NLRB 765, *St. Rose de Lima Hospital, Inc.*, 223 NLRB 1511, *Morristown-Hamblen Hospital Association*, 226 NLRB No. 13.

I note that Local 300 has represented certain categories of employees in all the Employer's facilities since 1969. Under the current collective-bargaining agreement between the Employer and Local 399, which is effective by its terms from November 1, 1977 to November 1, 1980, the following classifications are now represented by Local 300: Warehousepersons, drivers, file clerks, medical records clerks, x-ray receptionists, pharmacy clerks, senior pharmacy clerks, clerk typists, accounting pricers, insurance and appointment clerks, receptionists, telephone receptionists, receptionist/pricer/insurance clerks, LVNs I, LVNs II and LVNs III.

In September, 1976, Teamsters Local 911 filed a petition with the Board in Case 31–RC–3645 seeking to represent the registered nurses employed at 18 of the 19 HMOI facilities listed above. Local 399 intervened. After a hearing concerning the issue of the appropriate unit, the undersigned determined that a unit consisting of RNs and excluding LVNs was appropriate. I have attached a copy of the Decision and Direction of Election which is designated as Exhibit A. The Employer's request for review was denied in that case. The parties stipulated that the record in that case should be part of the record in the instant case. For the reasons set forth in the attached Decision, I find that the RNs constitute an appropriate unit. An election was held on De-

cember 9, 1976 with both Local 911 and Local 399 appearing on the ballot. A majority of the registered nurses voted against representation, therefore, neither union was certified as the bargaining representative.

Decision of Regional Director, HMO International/California Medical Group Health Plan, Inc., note 4, Case 31–RC–4016 (Jan. 27, 1978), *reproduced in* Record at 79–80.

The Employer-Petitioner and the Union-Petitioner hereinafter designated as the Employer and the Union respectively, each filed a petition for a unit consisting of RNs. The Union seeks to represent a unit consisting of the registered nurses, hereinafter called the RNs, at the Employer's 18 locations in the greater Los Angeles, California area. The Employer and the Intervenor also agree that the scope of the unit is composed of the Employer's 18 facilities in the greater Los Angeles area (the nineteenth facility being located in the San Diego, California area). Despite its petition, the Employer contends, in agreement with the Intervenor, that a unit consisting only of RNs is inappropriate. Rather the employer and the Intervenor contend that the only appropriate unit is one which includes both the RNs and the Licensed Vocational Nurses, herein called LVNs, at the various locations because of the identity of interests between the employees in the two job classifications. The Intervenor however, states that it wishes to participate in an election in any unit found appropriate.

The record establishes that the Employer employs both RNs and LVNs at each of the 18 facilities. A nurse (RN or LVN) is assigned to each doctor based upon the experience of the nurse in the specialty area in which the doctor practices. When a vacancy occurs, a nurse is hired based upon her experience in the specialty, rather than whether she is an RN or a LVN. The nurses' major functions are to assist the doctors. Thus, the nurses escort the patients to waiting rooms where they take patients' history and vital signs.

The nurses then assist the doctors in the examination or treatment. The LVNs and RNs use the same medical equipment. While the job duties are nearly identical, the RNs can give intravenous solutions under the direction of doctors but the LVNs can only give solutions under the direct supervision of doctors. However, since the facilities are out-patient clinics, rather than hospitals, use of intravenous solutions is infrequent. The nurses are under the same basic supervision and can substitute for each other during vacations.

The record also establishes that the benefits received by the RNs including sick leave, health and welfare and vacations, are the same as those received by the LVNs and other job classifications covered by an existing collective-bargaining agreement discussed, *infra*. The rates of pay for the various classifications do differ and the RNs receive a higher rate of pay than the LVNs. The same employee manual is given to all the employees who work for the Employer.

The education background requirements for the RNs and LVNs are different and are set by state law. The LVNs must complete two years of schooling at a vocational school while the RNs must complete four years of schooling at an accredited nursing college. The nurses in both classifications then must pass a state administered examination and the examinations for each are different. Obviously, the state requirements for licensure for each nursing classification is different with more stringent qualifications for RNs licensure. Based upon the above and the record as a whole, I find that the RNs are professional employees. *Mercy Hospitals of Sacramento, Inc.*, 217 NLRB No. 131.

The law is clear that a unit consisting only of RNs is appropriate for purposes of collective bargaining. *Mercy Hospitals of Sacramento, Inc., supra.* In that case, after considering the Congressional concern regarding a proliferation of bargaining units in the health care industry, the Board concluded that RNs "possess, themselves, interests evidencing a greater degree of separateness than those possessed by most other professionals in the health care industry." The Board there held that a separate unit of RNs was appropriate. In this regard, the contention that *Mercy Hospitals of Sacramento, Inc., supra*, is inapplicable to a clinic is clearly inapposite as the Board held in *Memorial Clinic, Ltd. P. S.*, 220 NLRB No. 217, that RNs constitute an appropriate unit without regard to whether the facility is an acute hospital or a clinic and without regard to their community of interest with other employees performing similar functions. Furthermore, Section 9(b) of the Act prohibits any professional employee from being included in a unit of non-professionals unless such professionals are granted a self-determination election regarding their inclusion in such a unit.

I further note that while the RNs have never been represented by any labor organization, there is a current collective-bargaining agreement between the Employer and the Intervenor which is effective from August 1, 1976 to August 1, 1977, and which covers a unit of employees including warehouse persons, drivers, clericals and LVNs, and excluding professionals, medical doctors, guards, RNs, X-Ray Laboratory Technicians and confidential secretaries.

I find that the LVNs are currently represented by the Intervenor and the current collective-bargaining agreement constitutes a bar to an election among the LVNs.

Decision of Regional Director, HMO International, Inc., note 4, Cases Nos. 31–RC–3645, 31–RM–523 (Nov. 10, 1976), *reproduced in* Record at 80(f)–80(g).

FERGUSON, Circuit Judge, dissenting:

We sit on a court of limited jurisdiction. The Constitution and laws have not empowered us to right every wrong we might perceive or imagine. That function is occasionally left in the hands of coordinate branches of our government. Such is the case here. As the majority correctly states,

judicial review is only appropriate when the NLRB has ignored a legal standard. The Board, however, has not done so in this case. Therefore, I dissent.

It is undeniable that the purpose of the 1974 amendment of section 2(2) of the Act, 29 U.S.C. § 152(2), is to limit the number of bargaining units in nonprofit hospitals so that unnecessary disruption of health facilities can be prevented. Yet, as the legislative history of the 1974 amendment of section 2(2) of the Act, 29 U.S.C. § 152(2), makes clear:

> Congress did not within this framework intend to preclude the Board acting in the public interest from exercising its specialized experience and expert knowledge in determining appropriate bargaining units.

120 Cong.Rec. 22575 (1974).

Thus, the amendment was not meant to interfere with the deference courts have traditionally paid to the Board's unit determination. Moreover, the amendment does not provide specific criteria the Board must follow in all circumstances. The majority argues that even if the amendment itself does not provide such criteria, *NLRB v. St. Francis Hospital*, 601 F.2d 404 (9th Cir. 1979), has interpreted the amendment as creating a specific rule—"disparity of interests"—that the Board must always follow when determining the appropriate bargaining unit in a public health facility. However, the holding of *St. Francis Hospital* is simply that the Board may not rely on a presumption in favor of an RN unit without on a previous occasion articulating the bases for the assumption. No such presumption was employed in this case. The Board gave due consideration to the need to prevent a proliferation of bargaining units in a nonprofit hospital. *See* Decision of Regional Director, *HMO International, Inc.*, n.4, Cases Nos. 31–RC–3645, 31–RM–523 (Nov. 10, 1976), *reproduced in* appendix to majority opinion. Such consideration is all that is required by the Board.

In dicta, *St. Francis Hospital* discusses the guidelines to be used by the Board in determining the appropriate bargaining unit for a public health facility. "While the community of interest standard may be decisive in other industries, it is not entirely controlling for the health care industry in the present context." *St. Francis Hospital*, 601 F.2d at 418. The court suggests that "by focusing on the disparity of interests between employee groups which would prohibit or inhibit fair representation of employee interests, a balance can be made between the congressional directive and the employees' right to representation." *St. Francis Hospital*, 601 F.2d at 419. Community of interest is itself only a guideline to be used by the Board; it is not a firm and fast rule that the Board must explicitly show was accurately applied. *St. Francis Hospital* suggests that disparity of interest might be a more appropriate guideline for the Board to use in a public health facility. However, nothing in the decision undermines the overall thrust of the amendment, which is to advise the Board that it must give due consideration to limit the proliferation of units in a public health facility.

Even if one were to adopt the more specific "disparity of interest" test, a remand to the Board would be inappropriate here. That test is plainly met, since the LVN's are *already in another unit*. One need not make a complicated comparative analysis of what kind of work the RN's and the LVN's are engaged in, what kind of pay they receive, etc. In this case, the "disparity of interests" is established by the simple reality that the LVN's are already represented by a union. *See* Decision of the Regional Director, *supra* ("I find that the LVNs are currently represented by the Intervenor and the current collective bargaining agreement constitutes a bar to an election among the LVNs."). On this fact alone this case can be distinguished from *St. Francis Hospital*. None of the cases cited by *St. Francis Hospital* or by the majority's opinion involve a fact situation where the LVN's are already represented by a union at the time the RN's filed for an election.

The "community of interest" standard has always served as one part of an overall balancing test. The Board has traditionally

been given great flexibility in balancing all the competing interests. Even if it were the case that the most appropriate unit, in light of the 1974 amendments, is a LVN–RN unit with a proviso of a *Sonotone* election, it is not necessary for the Board to arrive at the *most appropriate* unit, only *an appropriate* unit. Even if one were to adopt the disparity of interest test advocated, such a test should not be used to subvert the role of the Board as an expert body in the field of labor law. See *Rayner v. NLRB*, 665 F.2d 970, 974–75 (9th Cir. 1982).

This court is not in a position to make the careful evaluation of the facts necessary to determine the appropriate unit in a particular case. There is no need to undermine a long established judicial posture of deference to the Board simply because the majority would like us to do so. The enforcement order should be granted.