The TWIN CITY HOSPITAL CORPO-
RATION,
Petitioner–Cross–Respondent,

v.

NATIONAL LABOR RELATIONS
BOARD,
Respondent–Cross–Petitioner.

Nos. 89–5050, 89–5166.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 28, 1989.

Decided Nov. 22, 1989.

G. Roger King (argued), Timothy J. Owens, Bricker & Eckler, Columbus, Ohio, for petitioner-cross-respondent.

Aileen A. Armstrong, Deputy Associate General Counsel, Howard Perlstein, Richard A. Cohen (argued), N.L.R.B., Office of General Counsel, Washington, D.C., Frederick Calatrello, Director, N.L.R.B., Region 8, Anthony J. Celebrezze, Cleveland, Ohio, for respondent-cross-petitioner.

* The Honorable Thomas A. Wiseman, Jr., Chief Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

1. The Board's order is reported at 292 N.L.R.B. ——, No. 21, 130 L.R.R.M. 1237 (1988).

Before KENNEDY and NELSON, Circuit Judges, and WISEMAN, Chief District Judge.*

KENNEDY, Circuit Judge.

◼ Twin City Hospital ("the Hospital") seeks review of a National Labor Relations Board ("the Board") order to bargain with an employee Union. The Board cross petitions to enforce its order.[1] The Union had previously been certified as the exclusive representative of two employee units. The Hospital concedes that it refused to bargain with the Union, but asserts that it was entitled to do so because the Board improperly drew the bargaining units. In essence the parties dispute the propriety of an underlying Board decision which found that the Hospital's registered nurses ("RNs"), medical technologists ("MTs"), and medical laboratory technologists ("MLTs") were professional employees within the meaning of the National Labor Relations Act.[2] We affirm the Board's decision insofar as it found that the Hospital's RNs are professional employees, but because the record does not support the Board's finding that MTs and MLTs are professionals, we reverse this portion of the decision and decline to enforce the Board's order. We remand this case to the Board for further proceedings consistent with this opinion.

## I. Background

In September 1987, the Aluminum, Brick and Glass Workers, International Union, AFL–CIO ("the Union") filed petitions with the Board seeking to represent two groups of the Hospital's employees, a unit of professional employees and a unit of the nonprofessional employees. In October 1987, the Regional Director held a hearing to determine, among other things, whether the Hospital's RNs, MTs, and MLTs were professional employees. If the employees are professionals, they must be given an opportunity to form a bargaining unit sepa-

2. Since the underlying decision was effectively unreviewable, this Court's review of the refusal to bargain charge effectively is a review of the prior bargaining unit determination. *See NLRB v. Mr. Porto, Inc.,* 590 F.2d 637, 640 (6th Cir. 1978).

rate from nonprofessional employees.[3] The Regional Director determined that all three groups were professional employees within the meaning of the Act. In the election that followed, the employees of both the professional and nonprofessional units voted to be represented by the Union. Additionally, the employees in the professional unit voted against inclusion in the nonprofessional unit.[4] After challenges to the election were resolved, the Regional Director formally certified the Union as the exclusive bargaining representative for a unit of professional employees and a separate unit of nonprofessional employees.[5] The professional unit was defined as "All professional employees, including registered nurses, medical technicians and medical laboratory technicians, excluding all guards and supervisors as defined in the Act and all other employees." The nonprofessional unit was defined as "All service, maintenance, technical and clerical employees, excluding day care employees, professional employees, confidential employees, managerial employees and guards and supervisors as defined in the Act."

The Hospital continued to maintain that the RNs, MTs, and MLTs were not professional employees and should not have been placed in a separate bargaining unit.[6] In order to challenge the Board's finding, the Hospital refused to bargain with the Union as representative of either unit. Acting on a Union complaint, the Board's General Counsel issued an Unfair Labor Practice charge against the Hospital in July 1988. In September, the Board ordered the Hospital to cease and desist its refusal to bargain with the two units, finding the refusal to be a violation of sections 8(a)(1) and 8(a)(5) of the Act. It is from this order that the Hospital appeals.

## II. Legal Standards

The parties' essential dispute in this case is not over the legal definition of the term "professional employee," but over whether the facts in this case show that RNs, MTs, and MLTs fit within that definition. The Board's determination may only be reversed if the Board abused its discretion by finding that the RNs, MTs, and MLTs were professional employees within the meaning of the Act. *See NLRB v. HMO Int'l/California Medical Group Health Plan, Inc.*, 678 F.2d 806 (9th Cir.1982); *NLRB v. Sweetwater Hosp. Ass'n*, 604 F.2d 454 (6th Cir.1979); *Michigan Hosp. Serv. Corp. v. NLRB*, 472 F.2d 293 (6th Cir.1972).[7]

The Act defines professional employees in relevant part as:

Any employee engaged in work (i) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work; (ii) involving the consistent exercise of

**3.** Professional employees can be included in a bargaining unit with nonprofessional employees only if a majority of the professional employees agree to be included in the nonprofessional unit. 29 U.S.C. § 159(b)(1).

**4.** Among the nonprofessional unit employees, 88 of the 91 eligible employees cast ballots, 48 for the Union and 40 against. Among the professional employees, 33 of the 36 eligible employees cast ballots. On the question of inclusion in the nonprofessional unit, 8 votes were cast in favor of inclusion, 21 against, with 4 votes challenged, unresolved, and uncounted because they did not affect the outcome. On the question of certification of a separate, professional union, 18 votes were cast for the Union, 13 against the Union, and two challenged, unresolved, and uncounted because they would not affect the outcome of the election. On the record before us, no distinction was made between the votes of the approximately 30 RNs, 3 MTs, and 3 MLTs.

**5.** The Hospital raised several objections to the election, none of which are raised in this appeal.

**6.** The question of whether these employees could have been placed in a separate bargaining unit regardless of their professional status is not before this Court since the Board made no findings on the question.

**7.** The Hospital also argues that the Regional Director and the Board did not adequately examine the record, instead adopting a *per se* approach to the professional status of RNs. Because a *per se* approach was taken, the argument continues, this Court should not defer to the underlying decision. While the Regional Director's decision may be less detailed than this Court would prefer, we are unwilling to presume on these facts that the Director and the Board abdicated their responsibility to examine the underlying record.

discretion and judgment in its performance; (iii) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; (iv) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes.

29 U.S.C. § 152(12)(a).

■ Professional employees must be distinguished from technical employees and other, nonprofessional and nontechnical employees. The Hospital argues that RNs, MTs, and MLTs are technical employees rather than professional employees.[8] A panel of this Court has summarized the Board's position by stating that technical employees are individuals "who do not meet the Act's definition of professional employees ... but whose work involves independent judgment and training." *Sweetwater*, 604 F.2d at 456 n. 2. *See also Barnert Memorial Hosp. Center*, 217 N.L.R.B. 775 (1975). Unfortunately, this definition provides little help in resolving the case before us. While prior Board cases discuss the dividing line between professional and technical employees—and in fact discuss this dividing line in the context of medical technicians—we can discern no overriding rules or principles that further our resolution of this case. *See, e.g., St. Barnabus Hosp.*, 283 N.L.R.B. 472 (1987) (laboratory technologists found to be professionals); *Illinois Valley Hosp.*, 261 N.L.R.B. 1048 (1982) (MTs but not MLTs found to be professionals); *Middlesex Gen. Hosp.*, 239 N.L.R.B. 837 (1978) (laboratory technologists found to be technical employees); *Mason Clinic*, 221 N.L.R.B. 374 (1975) (MTs found to be professionals); *Barnert*, 217 N.L.R.B. 775 (MTs, but not technicians, found to be professionals);

*Alexian Bros. Hosp.*, 219 N.L.R.B. 1122 (1975) (laboratory technologists, but not technicians, found to be professionals). Rather, the cases demonstrate that the line between professional and technical employees is ill defined. This confusion is exacerbated by the statute itself which was apparently drafted without considering the possible existence of a separate category of employees falling between those with professional and nonprofessional status. The parties have not asked us to establish that line nor would it be appropriate for us to usurp the Board's function by doing so. Our role in this case is limited to reviewing the record to determine whether there is sufficient evidence from which the Board could determine that the Hospital's RNs, MTs, and MLTs are professional employees.

### III. The Registered Nurses

■ The Hospital itself is a small, primary care facility serving a mostly rural area near Dennison, Ohio. At the time of the Board's first hearing, the Hospital contained only fifty-three beds for in-patient care. The Hospital's thirty member RN staff provides traditional nursing services in one of five departments: medical/surgical, obstetrics/nursery, operating/recovery room, emergency room, and intensive/critical care. We find that the Board did not abuse its discretion in finding that the RNs were professional employees.

Sufficient evidence can be found in the record to support each of the four elements found in the statutory definition. The Hospital cannot seriously contend that the last two elements are not met. The third element requires that the RNs' work be "of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time." 29 U.S.C. § 152(12)(a)(iii). The record establishes and the Hospital admits that the RNs perform a wide variety of duties in several different departments of the hospital. The day-to-day duties of any

---

**8.** It is possible that the Board could have certified a separate unit for technical employees. The Board did not do so in this case, however, and included technical employees in a class with service, maintenance, and clerical employees.

individual RN cannot be predicted with any degree of certainty.

■ The fourth element provides that the position must require "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or an apprenticeship or from training in the performance of routine mental, manual, or physical processes." 29 U.S.C. § 152(12)(a)(iv). The state of Ohio requires RNs to be licensed by the State Board of Registry. To obtain a license an individual must sit for and pass a written board examination and complete one of the following three courses of study in preparation for the examination: (1) a two-year associate degree consisting of theoretical course in various nursing disciplines, (2) a three-year program of combined theoretical and clinical study, usually completed in a hospital, or (3) a four-year baccalaureate (B.S.) program in nursing. The Hospital argues that RNs who have not received a four-year degree cannot meet the statutory education requirements unless they are performing duties commonly reserved for those of that higher educational attainment. Since the Hospital does not require its RNs to possess such skills or to perform duties requiring the additional education, the Hospital asserts that all of its RNs, including those with a four-year degree, are not professionals.[9] We do not believe that the Board abused its discretion by finding the educational requirement met regardless of the educational path taken by the majority of the RNs.

■ The Hospital's only substantial argument involves the first two statutory criteria. The statute requires, first, that the work must be "predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work," 29 U.S.C. § 152(12)(a)(i), and, second, that the position must require "the consistent exercise of discretion and judgment in its performance." 29 U.S.C. § 152(12)(a)(ii). Again, the record adequately supports the Board's finding that the RNs' work is intellectual in nature and requires the use of discretion and judgment. The record establishes that RNs perform a number of tasks in different departments within the hospital. The majority of these tasks fall within the following categories: monitoring the condition of newly admitted and continuing patients, assessing the medical conditions and needs of those patients, developing a patient care program to meet those needs, and implementing the program once developed. The record shows that RNs exercise considerable discretion in choosing the exact methods by which to accomplish the tasks within each category, relying not only on the direction of doctors and the guidance of hospital policies, but on their own experience and training as well.

■ The Hospital correctly points out that it requires RNs to perform arguably nonprofessional tasks on an as-needed basis.[10] Because the RNs' work involves such nonprofessional duties, the Hospital asserts that the Board erred in classifying the RNs as professional employees. While the Board arguably could have relied on this testimony to find that the Hospital's RNs are not professional employees—particularly if the Board believed a large percentage of an RN's time is spent on such tasks—we do not believe that the evidence compels such a result or that the Board acted unreasonably in rejecting this position. *See Illinois Valley*, 261 N.L.R.B. 1048 (the fact that professional employees perform both professional and nonprofessional duties does not destroy their professional status).

---

**9.** All but three of the Hospital's thirty RNs attended a two or three-year degree program before sitting for the board exam. The Hospital does not differentiate between RNs on the basis of their degrees.

**10.** These tests include, (1) drawing blood, (2) administering cardiopulmonary treatments, (3) providing physical therapy, and even (4) performing housekeeping chores such as changing linen and cleaning instruments.

## IV. The Medical Technologists and Medical Laboratory Technologists

The Hospital's three MTs and three MLTs work in the Hospital's laboratory and bloodbank, performing tests ordered by physicians. Generally, this involves determining whether the sample is suitable for testing, adjusting the testing equipment to properly perform the test, and reporting the test results. While the MTs receive more formal training and pass a more comprehensive examination, the Hospital assigns work and affords independence without regard to the degree status of the two groups. The only distinction between the two is that MTs receive a slightly higher base rate of pay. The Board found and the parties agree that MTs and MLTs are either both professional or both technical employees within the meaning of the Act and Board precedents. *See also Middlesex,* 239 N.L.R.B. 837 (Technologists II and III considered as a single group since they perform similar job functions).

■ The Hospital contends that MTs and MLTs do not meet any of the four statutory criteria for professional employees. While the record may well support the opposite conclusion equally well, we believe the Board did not abuse its discretion in finding that the last two statutory criteria for professional employee status are met. There is testimony in the record that the day-to-day work of the MTs and MLTs cannot be predicted. Further, the testimony suggests that the actual time to perform any given test varies as well. This testimony clearly supports the Board's conclusion that the work of MTs and MLTs is not "standardized in relation to a given period of time."

■ Further, there is sufficient evidence to support the Board's conclusion that the educational requirements are met. MTs must pass a comprehensive national certification examination covering topics in chemistry, hematology, bacteriology, immunology, and phlebotomy. In preparation for this examination, most MTs complete a four-year college degree—three years of classroom instruction and one year of clinical instruction in a hospital laboratory. MLTs also must pass an examination in these subjects, though the examination itself is apparently less detailed. MLTs receive only two years of formal instruction, divided equally between classroom and clinical settings. Finally, the Hospital itself provides an additional three months of training to new employees before allowing them to perform their job without close supervision.[11] We reject the Hospital's contention that the educational background of an MLT necessarily falls short of the level required for professional statute.

■ The Hospital employs three MTs and three MLTs. One of the MTs holds only a two-year degree but, due to her experience, received MT certification after passing the MT examination. Further, one of the MLTs did not complete the two years of formal education, but was instead trained in a laboratory setting before taking the national examination. The Hospital argues that because some employees received their education in a less formal setting that the educational requirement is not met. The fact that one or more employees have not been educated in a more traditional and structured classroom setting does not necessarily preclude a finding of professional status. *Chrysler Corp.,* 154 N.L.R.B. 352, 355–57 (1965). This is particularly the case when most persons in the field follow a more formal educational path. Further, the statute itself states that professional employees may receive their training in a hospital program.

■ While the final two statutory requirements may be met, the record does not support the Board's conclusion that the first two requirements are met.[12] These

---

**11.** It is unclear from the record whether all technologists or only MLTs receive this additional training.

**12.** We do not mean to imply that such a record could not be developed in a future case, only that the record before us is not sufficiently developed to support the conclusion in this case. Determinations of professional employee status are necessarily made on a case-by-case basis

two elements require respectively that the work be intellectual in nature and that the work involve the consistent exercise of discretion and judgment. There is very little testimony in the record on the day-to-day duties of MTs and MLTs. The one witness who described the work—the coordinator of laboratory and blood bank services—noted that hematology and chemistry work generally requires the technologist to place a sample in a machine and read the results. The witness did testify that urinalysis and "especially" blood banking work involves more "discretion and judgment."[13] But when asked about the blood banking functions the witness described the work as "cook-bookish ... you have to use your mind and your eyes to decide the outcome of tests. In other words, there's not an instrument that's going to give you the value, you know." The only other meaningful testimony about the intellectual and discretionary nature of the work is a statement that the technologists must determine the suitability of the sample and perform unspecified work on their equipment in order to obtain acceptable results. While the witness at numerous points asserted that work in all areas of a technologist's job was intellectual in nature and required the use of judgment and discretion, such an unsubstantiated conclusion, particularly when phrased in legal terms, cannot support the Board's finding.[14] It is the Board, not the witness, who must decide whether the job required professional judgment and discretion based on what the job entails.

While we accord the Board's decisions great deference, the record before us is simply insufficient to support the Board's conclusion that MTs and MLTs are professionals within the meaning of the statute.

## V. Remedy

■ The Hospital has asked that we refuse to enforce any part of the Board's cease and desist order and issue a ruling

that declares that its MTs and MLTs are technical employees within the meaning of the Act and prior Board cases. Because the Board relied on an unsubstantiated conclusion about the professional status of MTs and MLTs, we clearly must refuse enforcement of the Board's order. We decline, however, to usurp the Board's role by ruling that MTs and MLTs are technical employees as a matter of law. *See Amoco Prod. Co. v. NLRB*, 613 F.2d 107, 111–12 (5th Cir.1980). While the record before us does not sufficiently support the conclusion, many of the prior Board rulings conclude that some medical technologists are professionals.

## VI. Conclusion

For the foregoing reasons, we affirm in part and reverse in part the Board's decision and refuse to enforce its order. This case is remanded for further proceedings not inconsistent with this opinion.

---

and must properly be made by the Board in the first instance. *See* 29 U.S.C. § 159(b).

**13.** Blood-banking work on average takes up about 25% of a technologist's time.

**14.** These were not all the job functions of medical technicians. The witness also stated that

MTs and MLTs in some cases draw samples from patients, place copies of test results on patient charts, occasionally draw blood for phlebotomists, perform EKG's for cardiopulmonary therapists, and perform odd tasks for other employees.