9 F.3d 108
 145 L.R.R.M. (BNA) 2768
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner-Cross-Respondent,
v.
The TWIN CITY HOSPITAL CORPORATION, Respondent-Cross-Petitioner.
 Nos. 92-5255, 92-5375.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before KENNEDY and SILER, Circuit Judges, and BERTELSMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 In this appeal, the National Labor Relations Board seeks enforcement of an order directing The Twin City Hospital Corporation, an Ohio entity, to bargain with a certified unit of its nonprofessional employees. The Hospital cross-petitions for review, claiming that the order is invalid. For reasons stated herein, we enforce the Board's order and deny the Hospital's cross-petition.
 
 BACKGROUND
 
 2
 In 1987, the Aluminum, Brick and Glass Workers, International Union, AFL-CIO filed petitions with the Board seeking to represent groups of professional[1] and nonprofessional employees at the Hospital. Though the Hospital objected to the constitution of these groups, the Board conducted elections for both employee classifications. Both voted in favor of representation: the professionals 18-13 and the nonprofessionals 48-40.
 
 
 3
 Despite certification of the Union as representative of both groups, the Hospital refused to bargain, continuing to maintain that certain employees (specifically registered nurses, medical technologists (MTs), and medical lab technologists (MLTs)) should not have been included within the "professional" bargaining unit. The Hospital's refusal to bargain precipitated an unfair labor practice proceeding and ultimately an order to bargain from the Board. In the first appearance of this case on appeal, a panel of this court refused to enforce the Board's bargaining order based on the lack of sufficient record support for classifying the MTs and MLTs (which numbered six) within the "professional" category. See Twin City Hosp. Corp. v. NLRB, 889 F.2d 1557, 1564 (6th Cir.1989).
 
 
 4
 On remand, the Board addressed the panel's concerns by reopening the unfair labor practice case and referring it to an ALJ for the purpose of gathering more evidence on the proper characterization of MTs and MLTs. Evaluating this expanded record, the Board determined that it originally had misclassified the subject employees. As a result, the Board removed the MTs and MLTs from the group of professional employees and restarted the representation process for that classification. However, the Board summarily affirmed its prior bargaining order with respect to the nonprofessionals. In a brief textual and footnote discussion, the Board stated:
 
 
 5
 We affirm our decision ordering bargaining in the nonprofessional unit. (footnote 10)
 
 
 6
 (Text of footnote 10:
 
 
 7
 The tally of votes in the nonprofessional unit election resulted in 48 votes for and 40 votes against representation, with no challenged ballots. Even if all six technologists' votes were included in that tally, they could not alter the results.
 
 
 8
 We are mindful of the fact that the [Hospital] is being required to bargain with a unit which now includes [MTs and MLTs], classifications that were not previously part of the unit when the election was conducted to determine whether the nonprofessionals wanted union representation. The scope of the unit, however, has not changed because the overall classification of technicals was originally included.) (citation omitted))
 
 
 9
 The Board now seeks enforcement of its order, and the Hospital cross-petitions for review.
 
 DISCUSSION
 
 10
 The Hospital admits its refusal to bargain with the nonprofessional employees. However, it claims that such refusal is excused because the Board's bargaining order is invalid. As a threshold question, the issue of whether the Hospital waived its chance to challenge the bargaining order arises.
 
 Jurisdiction
 
 11
 Section 10(e) of the National Labor Relations Act regulates review and enforcement of Board decisions. Among many other things, that section provides:
 
 
 12
 No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.
 
 
 13
 29 U.S.C. Sec. 160(e) (codification of Act). To the Board, Sec. 10(e) bars the Hospital's appeal of the bargaining order. The Hospital maintains that it complied with Sec. 10(e), preserving review.
 
 
 14
 The law of Sec. 10(e) waiver is fairly clear. If the Board sua sponte resolves an issue, and the adversely affected party fails thereafter to file some form of exception with the Board, Sec. 10(e) bars review of the issue. See Woelke & Romero Framing, Inc. v. NLRB, 456 U.S. 645, 665-66 (1982); Van Dorn Plastic Mach. Co. v. NLRB, 881 F.2d 302, 306 (6th Cir.1989); Southern Moldings, Inc. v. NLRB, 728 F.2d 805, 806 (6th Cir.1984) (en banc). An issue is considered raised, and a Board action thus not sua sponte, if the Board received sufficient notice of the issue prior to rendering a decision. To wit:
 
 
 15
 The "specificity required for a claim to escape the bar imposed by Sec. 10(e) is that which will 'apprise the Board of an intention to bring up the question,' "....
 
 
 16
 ....
 
 
 17
 ... [T]he main function of section 10(e) is to allow the Board to consider an issue in the first instance.
 
 
 18
 NLRB v. United States Postal Serv., 833 F.2d 1195, 1202-03 (6th Cir.1987) (citations omitted). Thus, directing the Board's attention to an issue preserves review. Notably, if consideration of an issue becomes a necessary incident to a case before the Board, review of that issue will lie even in the absence of explicit argumentation. See id. (distinguishing situation where party attempts to present new, independent issue on appeal, which Sec. 10(e) bars, from situation where party attempts to present "necessarily consider[ed]," dependent issue, which Sec. 10(e) does not bar); NLRB v. Watson-Rummell Elec. Co., 815 F.2d 29, 31 (6th Cir.1987) (holding that review is preserved when arguments to Board "should have prompted the Board to inquire further" into particular legal issue).
 
 
 19
 The parties present no real quarrel with the foregoing principles. Rather, they disagree about the result dictated by these principles. The context below is important. As noted, after the Sixth Circuit remanded the Board's first petition for enforcement, the Board reopened the case to re-evaluate the appropriate classification for MTs and MLTs. An ALJ conducted a hearing and both sides filed post-hearing briefs to guide the Board's decisional process. To the Hospital, various actions in that process expressly signalled to the Board that the nonprofessional group certification was in issue. Specifically, the Hospital refers to the following:
 
 
 20
 1) In its post-hearing brief, the Hospital explicitly requested "conduct of a new election" if the Board reclassified the subject employees, see JA 169;
 
 
 21
 2) At the hearing, the Hospital indicated its potential disagreement with an ALJ remark endorsing the continued valid status of the nonprofessional group, see JA 234-35;
 
 
 22
 3) After remand from the Sixth Circuit, the Hospital requested new plenary representation proceedings, instead of an expanded unfair labor practice proceeding, see JA 155-56;
 
 
 23
 4) In the Union's post-hearing brief, it explicitly argued that reclassification of the MTs and MLTs could not affect the nonprofessional group status, see JA 200 & 202.
 
 
 24
 To the Hospital, these remarks, singly and together, served to place the issue of the nonprofessional group certification "before the Board," and thus preserved it for appellate review. In any event, the Hospital views the nonprofessional group status as so intertwined with the professional that the issue should have been obvious to the Board.
 
 
 25
 The Board quarrels with the Hospital's factual recitation. To the Board, none of the evidence the Hospital cites presented the disputed issue. Rather, the Board maintains that it sua sponte discussed the effects of reclassification on the nonprofessional employee group. The Board rejects the Hospital's notice arguments as dependent on equivocal, generalized statements insufficient to preserve review under Sec. 10(e).
 
 
 26
 This court clearly has jurisdiction to review the merits of the bargaining order. The standard for preserving an issue under Sec. 10(e) requires only that the Board's attention be directed to the issue. In this case, all parties recognized a question regarding the validity of the nonprofessional group certification. Moreover, it was an issue that clearly begged resolution. After all, for the employees in contention, inclusion within one group meant exclusion from the other. Thus, the Hospital's efforts to move the MTs and MLTs from professional to mutually exclusive nonprofessional status necessarily signified a challenge to the validity of both groups' certifications. It would be unreasonable to think that the Hospital was requesting invalidation of the professional employee group (after removing the six employees at issue) but not invalidation of the similarly affected nonprofessional employee group (after adding the six employees at issue). The issue inhered in the legal situation presented. As such, and especially given the parties' repeated references to the issue before the Board, Sec. 10(e) presents no bar to review.
 
 Merits
 
 27
 Aside from an introductory procedural argument,[2] the Hospital offers two theories attacking the Board's bargaining order. The Hospital's central contention is that the change in the nonprofessional unit wrought by addition of the six MTs and MLTs voids the prior election result. The Hospital offers the following analysis: 1) a bargaining vote is valid only if voters make an informed choice; 2) a significant post-election change in a bargaining unit prevents voters from having made an informed choice; 3) the post-election addition of the six technical employees to the nonprofessional group altered the group significantly, thus voiding the previous election.
 
 
 28
 The Hospital stresses various factors supportive of its position. For example, the original nonprofessional unit voted 48-40 in favor of unionization. Thus, if the six new votes all had voted against unionization, only one more voter need vote differently to produce a nonunion outcome.[3] To the Hospital, the new employees reasonably might have persuaded an otherwise pro-union voter to reject representation. Given these possibilities, the Hospital requests remand for new representation proceedings.[4]
 
 
 29
 The Board, of course, supports affirmance of the bargaining order despite the addition of six new employees to the nonprofessional group. It places great emphasis on the following factors: 1) the new employees perform only technical jobs, as do the other nonprofessionals--thus, the group's scope remains unchanged; 2) the new employees represent only a 7% change in the group's size, which was 91 employees in the original election; 3) the large anti-representation vote (40 of 88 voters) indicates that anti-union campaigning was thorough and vigorous--thus, new employees campaigning against the Union would not have made a political difference; and 4) the new employees merely expand the group of nonprofessionals, which does not raise the same concerns as post-election changes that narrow the size (and bargaining power) of a group. To the Board, all of these elements indicate that the six employee difference should not invalidate the nonprofessional group certification.
 
 
 30
 The Board's decision to affirm the prior bargaining order with respect to the nonprofessional group was not an abuse of discretion. The essential question is whether the Board improperly treated the addition of the six technologists as having no effect on the prior election. Employees undoubtedly have a right to know for what unit they are voting in an election. See NLRB v. Parsons Sch. of Design, Div. of New Sch. for Social Research, 793 F.2d 503, 507 (2d Cir.1986) (noting "employees['] ... right to make an informed choice of a collective bargaining representative"). Thus, the post-election modification of a unit may retroactively prevent voters from making informed electoral decisions. However, such modification logically affects a preceding election result only if the "employees would have changed their votes had they been better informed." Sears, Roebuck & Co. v. NLRB, 957 F.2d 52, 56 (2d Cir.1992).
 
 
 31
 The Second Circuit seems to have led the analytical exposition in this area. It sensibly examines several factors. Numerical change in a unit is important, with an emphasis on drastic reduction in size. Size reduction might indicate a dilution of bargaining strength for a unit, making it less attractive to voters. See id. at 57. Scope and character changes also impact the evaluation. Thus, a post-election addition of employees with dissimilar job duties or salaries might signify tensions that could have altered original voter attitudes. See id. at 57-58. Finally, margin of victory plays a role; a close election deserves more scrutiny than a landslide. See id. at 58. A small margin becomes less significant, however, if the other factors indicate that post-election changes would not have affected the result. See id.
 
 
 32
 Though this circuit has not explicitly evaluated the Second Circuit's approach, that approach reasonably balances voters' interests against the Board's needed flexibility. Applying that analysis here serves to affirm the Board's treatment. As the Board argues, the reclassification of MTs and MLTs expands, instead of constricts, the nonprofessional group; thus, the employees would not have been faced with a smaller, less powerful unit had the change taken place pre-election. Additionally, inclusion of the technologists does not affect the scope of the group, which from the beginning has encompassed workers lacking the indicia of professional employees.[5] Because these considerations do not threaten the election's legitimacy, the small margin of union victory, 48-40, is the only factor that raises concern. However, "[s]tanding alone, the small margin does little to prove that, had [the employees known the ultimate unit], the result would have been different." Id.
 
 
 33
 To the preceding discussion must also be added the traditional deference accorded the Board in union election management. Given the Board's unique expertise in the area, its certification decision is reviewed only for an abuse of discretion. See, e.g., Industrial Acoustics Co. v. NLRB, 912 F.2d 717, 719 (4th Cir.1990). Here, the Board reasonably evaluated the nonprofessional group election against the employee reclassification and found the result valid. As such, the Hospital's petition is rejected and the Board's order to bargain enforced.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 This statutory term of art serves to distinguish between modes of employment based on specific criteria, including intellectual, educational, and discretionary function demands of a job. See 29 U.S.C. Sec. 152(12) (setting forth definition of "professional employee")
 
 
 [2]
 The Hospital argues that the Board handled the Sixth Circuit remand improperly. To the Hospital, the prior court decision amounted to an implicit finding that the Hospital had not committed unfair labor practices. As such, the Hospital maintains that the Board should have started representation proceedings anew instead of remanding to an ALJ for additional evidentiary proceedings. Though the Board again argues that Sec. 10(e) bars review, it is clear that the Hospital presented this argument to the Board, in the form of a special brief filed to contest the Board's chosen procedure
 On the merits, the Board correctly rejects the Hospital's argument. When the Sixth Circuit remanded the initial appeal, the Board simply followed recognized procedures in sending the case to an ALJ for nonadversarial evidentiary investigation. See Salem Village I, 263 N.L.R.B. 704 (1982). This flexible, hybrid procedure ensured that the Board could simply affirm a prior decision deemed appropriate, which it did for the nonprofessional group certification, or order that new representation proceedings based on a prior decision were inappropriate, which it did for the professional group. Though the Hospital attempts to argue that the Sixth Circuit implicitly mandated new representation proceedings when it refused to enforce the Board's initial order, it is clear that the court issued no such mandate. The court simply held that the record, as presented, did not support the Board's allocation of MTs and MLTs. Nothing in that decision prevented the Board from expanding and re-evaluating the record in the manner it did. See Twin City Hosp., 889 F.2d at 1564 (expressly rejecting the Hospital's request that the court "usurp the Board's role" by including MTs and MLTs as nonprofessionals as a matter of law).
 
 
 [3]
 Recall that the Board treated the 8 vote margin as determinative given the fact that reclassification added only 6 employees to the nonprofessional group
 
 
 [4]
 As an alternate ground for avoiding the Board's order, the Hospital attempts to argue that the Union no longer enjoys majority support among the nonprofessionals. The Hospital offers an employee petition to verify its position. As the Board argues, two things preclude this argument. First, the Hospital has not presented its case to the Board, despite having had ample time in which to do so. Second, assuming the validity of the Board's certification, which is the real issue on appeal, the Hospital may not refuse to bargain based on the Union's purported lack of majority status until it has bargained with the Union for at least one year. See NLRB v. Aquabrom, Div. of Great Lakes Chem. Corp., 855 F.2d 1174, 1183 (6th Cir.1988) (once a union is certified, an employer must bargain in good faith for one year before it may refuse based on the representative's perceived loss of majority status). Though the Hospital attempts to distinguish this rule, its efforts are unpersuasive. This is not the correct context for the Hospital's evidentiary claim
 
 
 [5]
 The Hospital strongly urges that the second Sears factor, employment dissimilarity, supports its position. The Hospital stresses that the educational and skill differences between the technologists and most of the other nonprofessionals might have allowed the MTs and MLTs to "dominate" the group. Although this argument is stronger than the one factually presented in Sears, as in that case, the fact that the employer originally sought to classify the disputed employees in the group to which they ultimately were assigned "is strong evidence that no great change in scope or character of the unit occurred." Sears, 957 F.2d at 58