NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

WEST SUBURBAN HOSPITAL, Respondent.

No. 77–1340.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1977.

Decided Feb. 16, 1978.

Elliott Moore, Deputy Associate Gen. Counsel, Carl L. Taylor, Mary Schuette, Attys., N.L.R.B., Washington, D. C., for petitioner.

Richard S. Ratcliff, Robert E. Fitzgerald, Jr., Richard L. Epstein, Chicago, Ill., for respondent.

Before SWYGERT and BAUER, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

Respondent West Suburban Hospital (West Suburban) is an Illinois not-for-profit hospital located in Oak Park, Illinois. West Suburban employs about one thousand people, of whom about 380 are non-professional employees. Petitioner National Labor Relations Board (Board) concluded that a group of 21 non-professional employees comprising West Suburban's maintenance department constituted "a distinct and homogeneous unit whose employees share a community of interest," *West Suburban Hospital,* 224 NLRB 1349, 1351 (1976), and determined that the maintenance department was an appropriate collective bargaining unit.

Following an election, the Board certified the International Brotherhood of Firemen and Oilers, Local No. 7 as the exclusive collective bargaining representative of the unit. West Suburban refused to bargain collectively with Local No. 7. The Board then determined that West Suburban's refusal to bargain constituted an unfair labor practice within the meaning of § 8(a)(5) and (1) of the National Labor Relations Act (Act), 29 U.S.C. § 158(a)(5) and (1), and ordered West Suburban to bargain. The Board has applied to this Court for enforcement of its order. Because the Board's decision and order violate the Congressional admonition against the proliferation of bargaining units in the health care field, we deny enforcement of its order.

Under § 9(b) of the Act, 29 U.S.C. § 159(b):

"The Board shall decide in each case whether, in order to assure the fullest freedom in exercising the rights guaranteed by this Act, the unit appropriate for purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof . . . ."

The determination of an appropriate unit for collective bargaining purposes is committed to the informed discretion of the Board. *Packard Motor Car Co. v. N.L.R.B.,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). But the Board's discretionary powers with respect to unit determinations are not without limits, and if the Board's decision "oversteps the law," *Id.,* at 491, 67 S.Ct. 789, enforcement must be denied. *Chemical Workers v. Pittsburgh Glass,* 404 U.S. 157, 171–172, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971).

The Board's determination that West Suburban's maintenance department constitutes an appropriate collective bargaining unit must be viewed against the backdrop of the legislative history of the 1974 amendments of the Act. See: *Memorial Hospital of Roxborough . v. N.L.R.B.,* 545 F.2d 351 (3rd Cir. 1976); *St. Vincent's Hospital v. N.L.R.B.,* 567 F.2d 588, No. 77–1027 (3rd Cir. Slip Opinion, December 15, 1977).

Not-for-profit hospital employers were included in the coverage of the original Wagner Act (1935). That Act was amended by the Taft-Hartley Act in 1947, which excluded from the term "employer" as used in the Act "any corporation or association operating a hospital, if no part of the net earnings inures to the benefit of any private shareholder or individual." 61 Stat. 137 (1947), 29 U.S.C. § 152(2). In 1974, the exclusion for not-for-profit hospitals was removed by P.L. 93–360, 88 Stat. 395.

Congress removed the exemption because it "could find no acceptable reason why . . . employees of . . . non-profit, non-public hospitals . . . should continue to be excluded from the coverage and protection of the Act." S.Conf.Rep.No. 998, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News pp. 3946, 3948. But Congress was also concerned that the welfare of hospital patients might be disrupted by a proliferation of collective bargaining units in health care institutions.

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

In the committee reports of both Houses, Congress expressed its concern over proliferation of units by admonishing the Board as follows:

"Due consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry. In this connection, the Committee notes with approval the recent Board decisions in *Four Seasons Nursing Center*, 208 NLRB No. 50, 85 LRRM 1093 (1974), and *Woodland Park Hospital*, 205 NLRB No. 144, 84 LRRM 1075 (1973), as well as the trend toward broader units enunciated in *Extendicare of West Virginia*, 203 NLRB No. 170, 83 LRRM 1242 (1973).[1]

[1] By our reference to Extendicare, we do not necessarily approve of all the holdings of that decision."

S.Conf.Rep.No.988, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin. News, pp. 3946, 3950; S.Rep.No.766, 93d Cong., 2d Sess. 5 (1974); H.Rep.No.1051, 93d Cong., 2d Sess. 7 (1974). In the instant case, the Board mentioned its awareness of this Congressional directive along with the other traditional factors employed to determine the appropriateness of collective bargaining units.

The maintenance unit at West Suburban consists of six maintenance mechanics, five stationary engineers, two electricians, a painter, a wall washer, two handymen, two carpenters, a splint man, and the maintenance department secretary. In contrast to at least eleven other similar bargaining unit cases,[1] the Board in the instant case concluded that a unit consisting of only the maintenance department was an appropriate collective bargaining unit. In reaching this conclusion, the Board stressed the importance of the amount of time the maintenance employees spent in the maintenance area of the hospital, and the fact that the maintenance employees were in contact with each other in the performance of their tasks about fifty percent of their time.

Common work station and work interrelationships are traditional factors the Board takes into account in making bargaining unit determinations. See *Wil-Kil Pest Control Company v. N.L.R.B.*, 440 F.2d 371, 374–375 (7th Cir. 1971). But such determinations in the health care field are not to be made solely on the basis of traditional factors. See: *St. Vincent's Hospital v. N.L.R.B.*, supra, at 592. Congress has made it clear that the Board must view evidence of traditional factors in the context of the stated Congressional policy of preventing proliferation of bargaining units in the health care field.

The Board itself acknowledged that the traditional criteria employed in making bargaining unit determinations must be weighed in the context of Congress' admonition:

"We strongly disagree with our dissenting colleagues' assertion that we have ignored the criteria traditionally considered when making unit determinations. Rather, it is they who have ignored the congressional mandate to avoid the proliferation of bargaining units in the health care industry. We are mindful that, under ordinary circumstances, units similar to the one requested here have been found appropriate in other industries, but ordinary circumstances do not exist here. In adopting the hospital amendments, Congress recognized that labor relations in the health care industry require special consideration due to the uniqueness of that industry in terms of the services it provides to the sick, infirm, or aged. It is in the context of the peculiar nature of the industry and the congressional mandate against the proliferation of bargaining units that we have

1. *Shriner's Hospital,* 217 NLRB 806 (1975); *Metropolitan Hospital,* 223 NLRB 282 (1976); *Jewish Hospital Association of Cincinnati,* 223 NLRB 614 (1976); *Riverside Methodist Hospital,* 223 NLRB 1084 (1976); *Baptist Memorial Hospital,* 224 NLRB 199 (1976); *St. Joseph's Hospital,* 224 NLRB 270 (1976); *Greater Bakersfield Memorial Hospital,* 226 NLRB 971 (1976); *Sutter Community Hospitals of Sacra-* mento, Inc., 227 NLRB No. 18 (1976); *Anaheim Memorial Hospital Association,* 227 NLRB No. 25 (1976); *Northeastern Hospital,* 230 NLRB No. 162 (1977); *Peter Bent Brigham Hospital,* 231 NLRB No. 132 (1977). But see: *Sinai Hospital of Detroit,* 226 NLRB 425 (1976); *Eskaton American River Health Care Center,* 225 NLRB 755 (1976); *St. Francis Hospital Medical Center,* 223 NLRB 1451 (1976).

weighed all of the criteria traditionally considered when making a unit determination and have, on balance, concluded that it is proper to place special significance on the high degree of integration of operations performed throughout a health care facility.

Were we to adopt the rationale applied by our dissenting colleagues, we could be faced with requests to find appropriate dozens of separate units of employees performing diverse professional, technical, and service and maintenance functions in an industry which, by its very nature, requires great numbers of employees in a myriad of classifications all ultimately involved in providing patient care. We shall not do so, because such an approach can only lead to an undue fragmentation of bargaining units in the health care industry which would totally frustrate congressional intent".

*Shriner's Hospital,* 217 N.L.R.B. 806, 808 (1975).

All of the approximately 380 non-professional employees at West Suburban are paid on an hourly basis. All share the same basic fringe benefits regarding insurance, pension, vacation, sick plan, and holidays. All share the same locker room and cafeteria. A formalized grievance procedure has been established which covers all employees. There is no significant difference in the rate of pay between maintenance employees and other non-professional employees. Allocation of employee parking spaces is done on the basis of longevity without regard to a particular employee's department. Employees are encouraged to and do transfer from other departments to the maintenance department. As the Board's dissenting members point out, while contact among maintenance employees occur during fifty per cent of their working time, maintenance employees spend 75 to 80% of their working time with employees of other departments.

In view of these facts, and in view of the Board's mere lip-service mention of the Congressional admonition as a factor to be taken into account, without any indication from the Board as to the manner in which its unit determination in this case implemented or reflected that admonition, we find that the Board's decision violates the Congressional directive that "[d]ue consideration should be given by the Board to preventing proliferation of bargaining units in the health care field."

The Board has been asked to make bargaining unit determinations in the health care field on frequent occasions since the enactment of the 1974 amendments.[2] The Second Circuit referred to the Board's decisions in this area as in a state of "disarray." *Long Island College Hospital v. N.L.R.B.,* 566 F.2d 833 (2 Cir. 1977). The Third Circuit could not reconcile the Board's previous decisions and rationale with the result reached by the Board in *St. Vincent's Hospital v. N.L.R.B., supra,* at 591. We add our observation that the Board apparently has embarked upon an erratic course in making bargaining unit determinations. Fixing a course with guidance from the Congressional directive of preventing proliferation of collective bargaining units in the health care field ought to alleviate this deficiency.

For the reasons stated herein, we deny enforcement of the Board's order.

ENFORCEMENT DENIED.