**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**MERCY HOSPITAL ASSOCIATION, Respondent.**

**No. 1168, Docket 79–4044.**

United States Court of Appeals, Second Circuit.

Argued June 15, 1979.

Decided Sept. 4, 1979.

Kathy L. Krieger, Washington, D. C.
(N.L.R.B., John S. Irving, John E. Higgins,
Jr., Robert E. Allen and Elliott Moore,
Washington, D. C., of counsel), for petition-
er.

Joseph F. Porrino, New York City (Put-
ney, Twombly, Hall & Hirson, Edward F.
Callan, New York City, of counsel), for re-
spondent.

Before MANSFIELD, MULLIGAN and
TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge:

The National Labor Relations Board ap-
plies for enforcement of its order requiring
the Mercy Hospital Association (the Hospi-
tal) to bargain with a Board-certified union
consisting of the maintenance employees of
the Hospital. In its decision certifying the
bargaining unit the Board did not discuss

the weight—if any—which it gave to the congressional admonition against the proliferation of bargaining units in the health care field. We therefore remand to the Board for consideration of the propriety of the certified unit under a standard affording appropriate deference to the mandate of Congress.

The Hospital, a non-profit 390 bed facility, retains 1,287 full and part-time employees. There is no history of collective bargaining for any Hospital employees. The Hospital is organized into 32 departments or subdivisions of which the maintenance department is one. At the time the petition for election was filed there were 23 maintenance department employees with 17 different job titles.[1]

In September, 1977 the International Union of Operating Engineers, Local 30–30A, AFL–CIO (the Union), filed with the Board a petition for certification as the exclusive bargaining representative of the Hospital's maintenance employees. The Hospital contested the propriety of such a bargaining unit, claiming, *inter alia,* that limiting the unit to maintenance employees would in this instance contravene the directive of Congress that the Board give due consideration to preventing proliferation of bargaining units in non-profit health care facilities. After hearings on the issue the Board's regional director found that a separate unit of maintenance employees was appropriate for collective bargaining. In December, 1977 the Board denied the Hospital's request for review of the regional director's decision and direction of election. Thereafter, an election was held in which a majority of the employees in the unit selected the Union as their collective bargaining representative. When the Hospital refused to negotiate the Union filed an unfair labor practice charge with the Board, alleging a violation of sections 8(a)(1) and 8(a)(5) of the Act, 29 U.S.C. § 158(a)(1), (5).

The Board's General Counsel moved for summary judgment on the ground that the issues raised by the Hospital had been litigated in the underlying representation proceeding. The Board granted the motion, finding that the Hospital was seeking to relitigate issues decided against it in the presentation proceeding, and that the Union had been properly certified as bargaining representative of the Hospital's maintenance employees. Therefore, the Board concluded that the Hospital's refusal to bargain was in violation of the Act and required the Hospital to bargain with the Union upon request.

■ Under the Act the Board has the responsibility to "decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof." Section 9(b), 29 U.S.C. § 159(b). Hence, unit determinations are matters committed by statute to the Board's discretion and are rarely disturbed by the courts. *Packard Motor Car Co. v. N.L.R.B.,* 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). "Nevertheless, it remains for the courts to insure that the exercise of the agency's discretion is not unreasonable, arbitrary, or in conflict with congressional intent." *St. Vincent's Hospital v. N.L.R.B.,* 567 F.2d 588, 590 (3d Cir. 1977); accord, *Long Island College Hospital*

---

1. The 17 job classifications are allocated among various skills or shops as follows:

| | |
|---|---|
| carpentry shop: | chief carpenter (1) |
| | senior carpenter (2) |
| | maintenance carpenter (this position was open at the time of the hearing) |
| paint shop: | painter/plasterer (1) |
| plumbing shop: | maintenance plumber (1) |
| | maintenance mechanic (1) |
| electrical shop: | chief electrician (1) |
| | maintenance electrician (2) |
| boiler plant: | chief watch engineer (1) |
| | assistant chief watch engineer (1) |
| | senior watch engineer (2) |
| | maintenance boiler room attendant (1) |
| general maintenance: | senior maintenance worker (3) |
| | maintenance worker (3) |
| grounds: | senior gardener (1) |
| | groundsman (1) |
| | chauffeur (1) |

*v. N.L.R.B.,* 566 F.2d 833, 840 (2d Cir. 1977), cert. denied, 435 U.S. 996, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978).

In this case an assessment of the propriety of the Board's unit determination must take place in the context of the 1974 amendment extending coverage of the Act to non-profit hospitals which had been previously exempted by the Taft-Hartley Act. 61 Stat. 137 (1947), 29 U.S.C. § 152(2). The amendment was prompted by the conclusion of Congress that there was "no acceptable reason why 1,427,012 employees of . . . non-profit, non-public hospitals . . . should continue to be excluded from the coverage and protections of the Act." S.Rep. No. 93-766, 93d Cong., 2d Sess. (1974), *reprinted in* 2 [1974] U.S.Code Cong. & Admin.News, pp. 3946, at 3948. At the same time, however, Congress was concerned that work stoppages arising out of inter-union jurisdictional disputes and the reluctance of many union members to cross the picket lines of other unions posed serious threats to uninterrupted patient care. See id. at 3948-52. Sensitivity to such dangers resulted in the incorporation into the amendment of a number of mandatory procedures, including strike notice requirements for unions representing employees of health care institutions. Id. at 3951.

In addition, Senator Taft offered a provision which would have prevented Board approval of more than the following four bargaining units in any health care institution: (1) professional employees, (2) technical employees, (3) clerical employees, (4) maintenance and service employees. S. 2292, 93d Cong., 1st Sess. (1973). While this specific limitation on the Board's discretion was not adopted, congressional concern for the underlying problem was embodied in a directive inserted in both the House and Senate Reports accompanying the final version of the bill:

> Due consideration should be given by the Board to preventing proliferation of bargaining units in the health care industry. In this connection, the Committee notes with approval the recent Board decisions in *Four Seasons Nursing Center,* 208

NLRB No. 50, 85 LRRM 1093 (1974), and *Woodland Park Hospital,* 205 NLRB No. 144, 84 LRRM 1075 (1973), as well as the trend toward broader units enunciated in *Extendicare of West Virginia,* 203 NLRB No. 170 83 LRRM 1242 (1973).[1]

[1] By our reference to *Extendicare,* we do not necessarily approve all of the holdings of that decision.

S.Rep. No. 93-766, 93d Cong., 2d Sess. (1974), reprinted in [1974] U.S.Code Cong. & Admin.News, pp. 3946, at 3950; H.R.Rep. No. 93-1051, 93d Cong., 2d Sess. 7 (1974).

Senators Taft and Williams, co-sponsors of the 1974 amendment to the Act, explained this directive during floor discussion on the bill. Senator Taft stated:

> . . . this is a sound approach and a constructive compromise, as the Board should be permitted some flexibility in unit determination cases. I cannot stress enough, however, the importance of great caution being exercised by the Board in reviewing unit cases in this area. Unwarranted unit fragmentation leading to jurisdictional disputes and work stoppages must be prevented.
>
> The administrative problems from a practical operational viewpoint and labor relation [sic] viewpoint must be considered by the Board on this issue. Health-care institutions must not be permitted to go the route of other industries, particularly the construction trades, in this regard.

120 Cong.Rec. 12944-45 (1974).

He further observed that

> every effort should be made to prevent a proliferation of bargaining units in the health care field and this was one of the central issues leading to agreement on this legislation. In this area there is a definite need for the Board to examine the public interest in determining appropriate bargaining units.

S.Rep. No. 93-766, 93d Cong., 2d Sess. at 255 (1974); accord 120 Cong.Rec. 22949 (1974) (remarks of Congressman Ashbrook).

The legislative history of the 1974 amendment clearly reveals that Congress expected the Board, when determining in

its discretion an appropriate bargaining unit in a health care institution, to give substantial weight to the public interest in preventing unit fragmentation. Indeed, in *Shriner's Hospital,* 217 N.L.R.B. 806 (1975), decided soon after enactment of the 1974 amendment, the Board seemed to perceive the congressional mandate in precisely that way.

In adopting the hospital amendments, Congress recognized that labor relations in the health care industry require special consideration due to the uniqueness of that industry in terms of the services it provides to the sick, infirm, or aged.

It is in the context of the peculiar nature of the industry and the congressional mandate against the proliferation of bargaining units that we have weighed all of the criteria traditionally considered when making a unit determination and have, on balance, concluded that it is proper to place special significance on the high degree of integration of operations performed throughout a health care facility.

Were we to adopt the rationale applied by our dissenting colleagues, we could be faced with requests to find appropriate dozens of separate units of employees performing diverse professional, technical, and service and maintenance functions in an industry which, by its very nature, requires great numbers of employees in a myriad of classifications all ultimately involved in providing patient care. We shall not do so, because such an approach can only lead to an undue fragmentation of bargaining units in the health care industry which would totally frustrate congressional intent.

Id. at 808.

In later decisions, however, the Board has been less solicitous of the directive of Congress.[2] As a consequence two circuit courts of appeals have denied enforcement of bargaining orders requiring hospitals to bargain with Board-certified units. In *St. Vincent's Hospital v. N.L.R.B., supra,* the Board had certified a bargaining unit consisting of boiler operators and three other maintenance workers in a hospital employing some 280 employees. The Third Circuit found that in approving the unit the Board had relied only on traditional industrial standards under which the employees in the unit could have been found to possess a sufficiently separate community of interest to justify certification.[3] The Court refused to approve the Board's bargaining order and stated that

. . . the factors of amount of contact between workers, separate immediate supervision, and the special skills of certain crafts must be put in balance against the public interest in preventing fragmentation in the health care field. A mechanical reliance on traditional patterns based on licensing, supervision, skills and employee joint activity simply does not comply with congressional intent

2. In *Long Island College Hospital v. N.L.R.B., supra,* 566 F.2d at 843, we observed that the Board's decisions in this area had fallen into disarray. Of the rulings there collected, the Board had rejected bargaining units limited to maintenance employees 11 times and approved them only four times including the later reversed decision in *West Suburban Hospital,* 224 N.L.R.B. 1349 (1976), enforcement denied, 570 F.2d 213 (7th Cir. 1978). Subsequently the Board has approved separate maintenance units with increasing frequency. *St. Vincent's Hospital and Medical Center of Toledo,* 241 N.L.R.B. No. 90 (1979); *Alleghany General Hospital,* 239 N.L.R.B. No. 104 (1978), application for enforcement pending (3d Cir. Nos. 77–2090, 79–1085); see *Southern Maryland Hospital Center,* 241 N.L.R.B. No. 91 (1979) (engineering and maintenance employees); *Fresno Community Hospital,* 241 N.L.R.B. No. 73 (1979) (engineering, electrical and maintenance employees); *Long Island College Hospital,* 239 N.L.R.B. No. 163 (1978) (engineering and maintenance employees).

3. Under the traditional community of interest test the Board examines a number of factors including

the level of skill required to perform the bulk of the maintenance work involved; the amount of production employees' work, if any the maintenance employees perform, and vice versa; the degree of interchange between production and maintenance departments; the degree of shared supervision; the location of the maintenance department. *Alleghany General Hospital, supra,* 239 N.L.R.B. No. 104, at 19 n.65.

to treat this unique field in a special manner.

Id. at 592.

Even more pertinent to the case *sub judice* is the Seventh Circuit's refusal to approve the Board's certification of a bargaining unit consisting solely of a hospital's maintenance personnel in *N.L.R.B. v. West Suburban Hospital,* 570 F.2d 213 (1978). The court was distressed by the apparently exclusive reliance of the Board in making the unit determination on traditional criteria such as the amount of contact among maintenance employees and the time spent by those employees in the physical confines of the maintenance department. The court faulted the Board's "mere lip-service mention of the Congressional admonition as a factor to be taken into account, without any indication from the Board as to the manner in which its unit determination . . . implemented or reflected that admonition." Id. at 216.

In response to such judicial criticism, see also *Memorial Hospital of Roxborough v. N.L.R.B.,* 545 F.2d 351, 360–61 (3d Cir. 1976), the Board in *Alleghany General Hospital,* 239 N.L.R.B. No. 104 (1978), application for enforcement pending (3d Cir. Nos. 77–2090, 79–1085), re-examined at length the legislative history of the 1974 amendment. Over a vigorous dissent by member Penello, the Board concluded that it gave sufficient deference to the congressional admonition against undue proliferation of bargaining units in health care institutions by applying to proposed hospital bargaining units the same community of interest approach ordinarily utilized for unit determinations in an industrial context. The Board reasoned that the congressional directive was really meant to forestall the grouping of health care institution employees by virtually *every* professional interest or job classification as has occurred, for example, in the construction industry. Id. at 9–11.

Since application of a community of interest test, however, has not generally resulted in such fragmentation of bargaining units in the industrial setting, the Board concluded that the sole use of that standard for determining hospital bargaining units satisfied the mandate of the 1974 amendment. Id. at 19.

 We disagree. Our reading of the legislative history leads us to conclude that in the 1974 amendment Congress was expressing concern not only that health care institutions be spared the egregious unit proliferation of the construction trades but that less extreme unit fragmentation arising from application of usual industrial unit criteria could also impede effective delivery of health care services. See *N.L.R.B. v. West Suburban Hospital, supra,* 570 F.2d at 215; *St. Vincent's Hospital v. N.L.R.B., supra,* 567 F.2d at 592; *Alleghany Hospital, supra,* 239 N.L.R.B. No. 104 at 34 (member Penello, dissenting). See also *Memorial Hospital of Roxborough v. N.L.R.B., supra,* 545 F.2d at 361. Thus, we hold along with our sister circuits that when the Board makes a unit determination for health care institution employees, traditional community of interest factors "must be put in balance against the public interest in preventing fragmentation in the health care field." *St. Vincent's v. N.L.R.B., supra,* 567 F.2d at 592. The Board in its decision must specify "the manner in which its unit determination . . . implement[s] or reflect[s] that admonition . . . ." *N.L.R.B. v. West Suburban Hospital, supra,* 570 F.2d at 216.[4]

 Such a course was not followed in the case before us. The Board's conclusion that maintenance department employees should be represented by a separate bargaining unit was premised solely on analysis of traditional criteria: (1) lack of operational and functional integration with other employees, (2) prevalent functional integra-

---

**4.** In a recent opinion, *N.L.R.B. v. St. Francis Hospital,* 101 L.R.R.M. 2943 (1979), the United States Court of Appeals for the Ninth Circuit refused enforcement of a Board order which had certified a separate unit for registered nurses in a nonprofit hospital rather than an all

professional unit. The court was critical of the "per se" approach of the Board and remanded for an independent weighing of the factors involved in that case in light of the congressional concerns we have here set forth.

tion within the maintenance department itself, (3) skill and experience of the maintenance employees, (4) supervision by a separate supervisory hierarchy, and (5) generally higher wage rates of maintenance employees in comparison to service employees. The regional director, whose opinion was adopted without further elaboration by the Board, ruled that the presence of the above factors demonstrated a "community of interest sufficiently separate and distinct from the service and other Hospital employees to justify a separate maintenance unit." The decision's single reference to the congressional admonition against proliferation of bargaining units was the conclusory observation that the congressional directive did "not preclude the appropriateness of a maintenance unit." This does not comply with the congressional concern which we have set forth in some detail and which requires an independent evaluation of the factors in this particular hospital. We therefore deny enforcement of the Board's order and remand for reconsideration consistent with this opinion.