NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

The LONG ISLAND COLLEGE HOSPITAL, Respondent.

No. 932, Docket 93–4169.

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1994.

Decided March 31, 1994.

Fred L. Cornnell, N.L.R.B., Washington, DC (Frederick C. Havard, Supervisory Atty., Jerry M. Hunter, General Counsel, Yvonne T. Dixon, Acting Deputy General Counsel, Nicholas E. Karatinos, Acting Associate General Counsel, John Truesdale, Alvin P. Blyer, Aileen A. Armstrong, Deputy Associate General Counsel, N.L.R.B., of counsel), for petitioner.

Joel E. Cohen, New York City (Patrick Della Valle, Celeste F. Como, Mudge Rose Guthrie Alexander & Ferdon, of counsel), for respondent.

Before KEARSE and LEVAL, Circuit Judges and POLLACK, District Judge.*

MILTON POLLACK, Senior District Judge:

### Overview

Local 144, Hotel, Hospital, Nursing Home and Allied Services Union, Service Employees International Union, AFL–CIO ("Local 144") won an election conducted by the National Labor Relations Board ("NLRB" or the "Board") in 1979 to be designated as the bargaining representative of the skilled maintenance and engineering department employees of the Long Island College Hospital (the "Hospital"). Based thereon the Board certified Local 144 as the bargaining representative of those employees.

On September 24, 1980, Local 144 requested the Hospital to bargain. The Hospital refused to bargain, disputing both the propriety of the election and whether the unit of skilled maintenance and engineering employees was an appropriate unit for Union representation. Thereupon, on December 30, 1980, the Board issued a complaint charging the Hospital with refusing to bargain with Local 144 in violation of 29 U.S.C. § 158(a)(1) and (5). The Hospital answered the complaint on February 2, 1981, and the Union moved for summary judgment shortly thereafter. The Board rendered a decision 13 years later, in 1993, requiring the Hospital to bargain on the basis of the 1979 election after years of procedural delay.

On March 12, 1993 the Board finally issued an Order directing the Hospital to bargain with Local 144, which the Hospital resists on the grounds of staleness of the 1979 election and the inappropriateness of the bargaining unit. On August 9, 1993, the NLRB petitioned this Court to enforce its Order.

* The Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

The procrastination by the NLRB through two or three turnovers of the Board[1] presents an example of prejudice to the parties involved. There has also been a considerable turnover of employees in the Hospital unit— 66 employees were in the unit in 1979; today there are only 56, and only 20 of the current employees were in the Hospital unit at the time of the 1979 election. We are not informed how they voted, but we do know that a majority of the current employees did not vote in the 1979 election.

The deference usually accorded to a governmental agency is inappropriate where, as here, such inordinate delay has occurred.

The inordinate passage of time prejudiced everyone, and the Hospital neither sought nor gained any benefit. Although we agree with so much of the Board's decision as finds the bargaining unit appropriate, enforcement in this case will be denied, the Board's order will be vacated, and the case will be remanded to require a representation election in that unit to be held under the Board's auspices.

### Background

This case is before the Court upon application of the NLRB to enforce its Order of March 12, 1993, 310 N.L.R.B. 689, directing that the Hospital negotiate with Local 144 as the bargaining representative of the Hospital's maintenance and engineering employees. The election on which this order is based was held 15 years ago on January 25, 1979. Local 144 was certified on August 27, 1980 as the bargaining representative of the employees in the Hospital unit in question.

This case has a long procedural history; the skilled maintenance and engineering employees of the Hospital began seeking a collective bargaining representative in 1964 under New York State labor laws at a time when the National Labor Relations Act ("NLRA") did not cover employees of nonprofit hospitals such as the Hospital. See 29 U.S.C.A. § 152(2) (West 1973). The state agency certified Local 144 as the bargaining

1. Pursuant to 29 U.S.C. § 153(a) there are five NLRB board members appointed to five year terms by the President, with the advice and consent of the Senate.

representative for the Hospital's engineering and maintenance employees, but the Hospital refused to bargain. In 1974, Congress amended the NLRA to cover employees of nonprofit hospitals. *See* Pub.L. No. 93–360, 88 Stat. 385 (1974) (codified at 29 U.S.C.A. §§ 152(2) and (14), 158(d) and (g) (West Supp.1993)). Acting thereon, the NLRB had originally granted comity to the State's certification of Local 144 as the bargaining representative of the Hospital's skilled maintenance and engineering employees and ordered bargaining. However, on the NLRB's petition for enforcement of its Order, the Second Circuit held that the extension of comity to the state decision was inappropriate, *Long Island College Hospital v. NLRB*, 566 F.2d 833 (2d Cir.1977) (Friendly, J.), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978), and remanded the case to the NLRB to determine for itself whether the unit was appropriate under the NLRA. The NLRB found that the unit was appropriate, and on January 25, 1979 the NLRB conducted an election. Two candidates for bargaining representative were on the ballot: Local 144 and District 1199 of the National Union of Hospital and Health Care Employees ("District 1199").

At the election, 66 employees voted as follows: 37 voted for Local 144; 23 voted for no union; 2 voted for District 1199; and 4 ballots were challenged. On August 27, 1980, the NLRB overruled the Hospital's objections to the election and issued a Sup-

plemental Decision certifying Local 144 as the bargaining representative of the maintenance and engineering employees of the Hospital.

On October 1, 1980, the Hospital refused to bargain, and Local 144 filed the charge that the Hospital violated the NLRA by refusing to bargain.[2] On December 30, 1980, the Regional Director issued a Complaint and Notice of Hearing alleging that the Hospital violated Section 8(a)(1) and (5) of the National Labor Relations Act by refusing to bargain with Local 144. After joinder of issue, the NLRB General Counsel moved for summary judgment. The Board held this motion undecided for the next three and a half years. While the motion for summary judgment was pending, the Board had adopted a new "disparity of interests" test to determine the appropriateness of bargaining units in hospitals in *St. Francis Hospital*, 271 N.L.R.B. 948 (1984) ("*St. Francis II*"). Accordingly, on September 17, 1984, the Board denied General Counsel's Motion for Summary Judgment, and remanded the proceedings for the Regional Director's further consideration consistent with the change in the Board's standards for evaluating the appropriateness of units in health care institutions.

Before *St. Francis II* the NLRB would find that a bargaining unit for hospital employees was appropriate wherever the employees shared a "community of interests";[3]

---

**2.** The NLRB's petition to this Court for enforcement of its bargaining order is the Hospital's first opportunity to obtain judicial review of the NLRB's 1979 determination that the Hospital's maintenance and engineering employees constitute an appropriate bargaining unit. The Supreme Court has held that NLRB representation determinations, such as directions of elections in an "appropriate unit," are not "final orders" judicially reviewable under § 10(e) and (f) of the NLRA [29 U.S.C. § 160(e) and (f)]. *American Federation of Labor v. NLRB*, 308 U.S. 401, 409–11, 60 S.Ct. 300, 304–05, 84 L.Ed. 347 (1940). To secure judicial review of NLRB representation decisions, an employer must become the target of an NLRB unfair labor practice order whose validity depends upon the propriety of the unit determination. *See Goethe House New York, German Cultural Center v. NLRB*, 869 F.2d 75, 77 (2d Cir.1989) ("Board orders in representation proceedings are not directly reviewable in court. As a rule, to obtain judicial review of such an order, an employer must refuse to bargain with

the union after the union has been certified, and then argue its case in a court of appeals after the Board has found the employer to have committed an unfair labor practice." (citations omitted)), *cert. denied*, 493 U.S. 810, 110 S.Ct. 52, 107 L.Ed.2d 21 (1989). Thus, the Hospital's "technical refusal to bargain" was a necessary prerequisite to obtaining judicial review of the NLRB's unit determination.

**3.** Under the community of interests standard, the NLRB finds that a bargaining unit is appropriate if the employees in the proposed unit are an "identifiable group with a community of interest that is sufficiently separate or distinct" from other employees to warrant separate representation. *Allegheny General Hospital*, 239 NLRB 872, 878 (1978), *enforcement denied*, 608 F.2d 965, 971 (3d Cir.1979). *See also Garden City Hospital (Osteopathic)*, 244 N.L.R.B. 778, 778 (1979) (the Board weighs such factors as "mutuality of interest in wages, benefits, and working conditions;

*St. Francis II* adopted a more restrictive test for hospital employees that required a showing that the proposed unit establish a sharper than usual "disparity of interests" between its members and other employees in order to create a separate bargaining unit.[4]

Following a hearing pursuant to the remand, the Regional Director recommended that the Board vacate the 1979 election and the 1980 Certification of Representative issued to Local 144, and withdraw or dismiss the Complaint and Notice of Hearing. The Regional Director decided that under the "disparity of interests" test, a separate maintenance unit was *in*appropriate. Local 144 requested review of that recommendation, and on May 1, 1986 the NLRB agreed to review the recommendation. For the next five years, until June 1991, the Board failed to take action of any kind in this case.

While the review requested by Local 144 was pending, the Circuit Court for the District of Columbia held that the narrower "disparity of interests" test announced by the NLRB in *St. Francis II*, while permissible, was not *required* by the 1974 Amendments to the NLRA. *Electrical Workers Local Union No. 474 v. NLRB*, 814 F.2d 697, 714–15 (D.C.Cir.1987). After the D.C. Circuit decision, the NLRB announced that it would promulgate substantive rules under the Administrative Procedure Act ("APA") on collective bargaining units in the health care industry. The NLRB announced that meanwhile it would continue to evaluate hospital employee bargaining units under the *St. Francis II* disparity of interests standard

until a new rule was promulgated by the NLRB and became effective. *St. Vincent Hosp. & Health Care Ctr.*, 285 N.L.R.B. 365, 366 (1987) ("[T]he final rule will be prospective in application only … [and will not be] applied to pending cases … [W]e have decided to continue to process cases under existing law until the final rule has been issued."). The NLRB later changed its position on the retroactivity of the rule, stating that it "shall apply to all decisions made on and after the effective date of the rule." *Second Notice of Proposed Rulemaking*, 284 N.L.R.B. 1527, 1571–72, 53 Fed.Reg. 33900, 33931 (1988) ("*NPR II* ").

However, rather than decide the Hospital's case under the disparity of interests test as the NLRB announced it would do with all pending cases, the NLRB continued to withhold decision.

While the Hospital's case remained pending, and two years after announcing that pending cases (such as this) would be decided under the disparity of interests standard, the NLRB promulgated its Final Rule on collective bargaining units in the health care industry, 29 C.F.R. § 103.30 (1989). Two years later, the Supreme Court upheld the validity of the Board's Final Rule in *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991).[5]

After the Supreme Court upheld the validity of the NLRB's Rule, the NLRB on June 13, 1991 again remanded the Hospital's case for further proceedings and directed that the

commonality of skills and supervision; frequency of contact with other employees; lack of interchange and functional integration; and area practice and patterns of bargaining.") In *St. Francis I*, the NLRB modified the community of interests standard to take into consideration the Congressional admonition against unit proliferation in the health care industry. 265 NLRB 1025, 1029 (1982). In addition to weighing the community of interest factors listed above, the employees in the proposed unit must fall into one of seven enumerated categories. *Id.* at 1031. Service and maintenance employees are one of the enumerated categories.

4. In *St. Francis II*, the NLRB stated that under the disparity of interests test
  more is required to justify a separate unit in a health care institution than in a traditional

industrial or commercial facility. That is to say, the appropriateness of the petitioned-for unit is judged in terms of normal criteria [community of interests factors], but sharper than usual differences (or "disparities") between the wages, hours, and working conditions, etc., of the requested employees and those in an overall professional or nonprofessional unit must be established to grant the unit.
271 N.L.R.B. 948, 953 (1984) (footnote omitted), *enforcement denied, Electrical Workers Local Union No. 474 v. NLRB*, 814 F.2d 697, 714–15 (D.C.Cir.1987).

5. The NLRB's Final Rule provides that for employees of acute care hospitals, a bargaining unit consisting of "[a]ll skilled maintenance employees" is appropriate. 29 C.F.R. § 103.30(a)(5).

parties be given an opportunity to address the applicability of the Final Rule which the Board had promulgated during the five year delay in this case.

Tiring of the meandering proceedings, on June 29, 1992, Local 144 filed a petition for a Writ of Mandamus with this Court, seeking to have the Court direct the Board to issue a final order in this case. The Board opposed the petition. Before the application for a writ of mandamus was decided, the Regional Director held a hearing on August 6, 1992 before ALJ Davis. Thus, this Court denied the petition for mandamus on August 11, 1992, with leave to renew it in 90 days. The ALJ determined that a unit consisting of maintenance and engineering department employees was an appropriate one. The ALJ held that the applicable standards to evaluate the appropriateness of a collective bargaining unit in the hospital were (i) the law in effect in October 1980 when the Hospital refused to bargain with Local 144 during the period when the "community of interests test" was utilized; and (ii) the current state of the law under the NLRB's 1989 Final Rule on collective bargaining units for hospital employees. The ALJ rejected the *St. Francis II* "disparity of interest" standard on the grounds that this standard was only relevant during the pendency of the NLRB's issuance of its April 21, 1989 Final Rule on Collective–Bargaining Units in the Health Care Industry. The ALJ noted the Regional Director's prior determination of the hospital maintenance and engineering employee unit's inappropriateness under the "disparity of interest" standard, but pointed out that the Regional Director's determination had never been endorsed by the NLRB. The ALJ rejected the Hospital's argument that application of the Final Rule would be an impermissible retroactive application of the rule. The ALJ also rejected the argument as to staleness of the election, ruling that the 13 year delay since the election, as well as the difference in the constituency of employees within the unit did not constitute requisite "unusual circumstances" to avoid the bargaining order.

On March 12, 1993, a three member panel of the NLRB affirmed the ALJ's rulings and adopted the ALJ's order, concluding that to allow a new election now would "undermine the central purpose of the [NLRA]." 310 N.L.R.B. 689, 689 (1993) (citing *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 111 S.Ct. 1539, 113 L.Ed.2d 675 (1991)). The panel of the NLRB ordered the Hospital to bargain with Local 144 as the representative of the Hospital's engineering and maintenance employees. All panel members agreed that the community of interests standard governed the case, but the panel was divided as to whether the Final Rule applied. The NLRB has petitioned this Court to enforce its bargaining order.

The Hospital concedes that under the NLRB's Final Rule on collective bargaining units in hospitals, 29 C.F.R. § 103.30, its maintenance and engineering employees constitute an appropriate bargaining unit. However, the Hospital asserts that the rule (promulgated in 1989 and approved by the Supreme Court in 1991) cannot be applied retroactively and does not govern this case; thus to determine the appropriate standard to govern this case, the Court must look to the law in effect just prior to the Rule's effective date. According to the Hospital, bargaining units for hospital employees—as announced by the Board itself—were evaluated just prior to that date under the *St. Francis II*'s disparity of interests test—under which the bargaining unit was not appropriate. The NLRB contends that the bargaining unit evaluation was properly made under either the community of interests standard in effect at the time of the alleged unfair labor practice in 1980, or, through a retroactive application of the NLRB's Final Rule on bargaining units in hospitals.

### Discussion

The NLRB's complaint against the Hospital charges a refusal to bargain. Although the ultimate issue is the appropriateness of the bargaining unit and the Hospital characterizes its conduct as a "technical refusal to bargain," prerequisite to appealing the propriety of the unit to this Court, this case is a refusal to bargain case. Thus, the relevant time period in this case is 1979–80, the time of the union election and the Hospital's al-

leged refusal to bargain. The issue in this case is not whether the maintenance and engineering employees are an appropriate unit today, but whether they were an appropriate unit at the time of the election.

■ The first issue to be addressed is whether the NLRB's Final Rule can be applied retroactively to this case. The Supreme Court has held

> [A] statutory grant of legislative rulemaking authority will not, as a general matter, be understood to encompass the power to promulgate retroactive rules unless that power is conveyed by Congress in express terms.

*Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (denying retroactive application of Health and Human Service's rules on Medicare reimbursement of hospital employees' wages). Pursuant to § 6 of the NLRA [29 U.S.C. § 156], the NLRB's rulemaking authority is governed by the Administrative Procedure Act which defines a rule as "an agency statement of general or particular applicability and *future effect* designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4) (emphasis added). Under *Bowen,* the NLRB's Final Rule should not be applied retroactively to this case.[6]

The NLRB's strained attempt to place this case within an exception to the rule against retroactive application for cases "pending on appeal" from an "initial adjudication" at the time the new law was enacted, *Butts v. City of New York,* 990 F.2d 1397, 1410–11 (2d Cir.1993), does not succeed. *Butts* is related to a narrow class of cases, those decided under a statute that is changed by legislative enactment while the case is pending on appeal. *Butts* has no application to an *agency's* retroactive application of *its own rules.*

■ Because the NLRB Final Rule does not apply to this case, the next question is what NLRB *case law* should apply. The Hospital argues that the law as it existed immediately prior to the effective date of the rule should apply. *See, e.g. Butts,* 990 F.2d at 1411 ("Since the 1991 Act does not apply to Plaintiff's case, we must apply the law as it existed prior to the Act."). Accordingly, the Hospital states that *St. Francis II*'s disparity of interests test should apply. The Hospital notes that the NLRB remanded this case to the NLRB Regional Director to consider the case under the standards of *St. Francis II* and that the Regional Director previously found that the bargaining unit was not appropriate. The Hospital is correct that because the NLRB's Rule does not apply, then the law as it existed just prior to the rule should be applied.

However, it is not entirely clear that *St. Francis II* was the prevailing law at the time just prior to the effective date of the NLRB Rule. The NLRB was prompted to begin substantive rulemaking when the D.C. Circuit held that the NLRB's disparity of interest standard was *not mandated* by the 1974 Amendments to the NLRA. *Electrical Workers Local Union No. 474 v. NLRB,* 814 F.2d 697, 714–15 (D.C.Cir.1987). After that decision, the NLRB stated that it would formulate new rules but that it would continue to apply *St. Francis II* until the Final Rule was issued. *St. Vincent Hosp. & Health Ctr.,* 285 N.L.R.B. 365, 366 (1987) ("[T]he final rule will be prospective in application only ... [and will not be] applied to pending cases ... [W]e have decided to continue processing cases under existing law until the final rule has been issued."). However, the NLRB also stated that *St. Francis II* would not be applied after the Final Rule was issued. *NPR II,* 53 Fed.Reg. at 33,391, 284 N.L.R.B. at 1571–72. Thus, it is unclear whether *St. Francis II* should be applied to cases pending *before* the effective date of the Final Rule but decided *after* the effective date of the Final Rule.

---

6. The NLRB's actions in this case are not identical to those taken by HHS in *Bowen:* there, an agency attempted to have a new rule retroactively replace an old *rule;* while here, the agency attempts to have a new rule retroactively replace a *standard* used for case-by-case adjudication. Nonetheless, we find the situations similar enough to apply *Bowen* to this case. Our holding is limited to the facts before us: we do not decide by this opinion that a rule enacted under the standards of the APA may *never* be retroactive. *Compare Pope v. Shalala,* 998 F.2d 473 (7th Cir. 1993) (allowing retroactive application of a clarifying rule).

Although this case was pending before the NLRB from May 1986–June 1991, and the case might have been decided by the NLRB under *St. Francis II* during that time, the fact is that the case was not finally decided by the NLRB until 1993, after the NLRB Final Rule was approved by the Supreme Court.

Recognizing that the NLRB has considerable latitude to decide whether and when to apply its own decisional law retroactively, *see, e.g., NLRB v. Food Store Employees Union, Local 347,* 417 U.S. 1, 10 n. 10, 94 S.Ct. 2074, 2080 n. 10, 40 L.Ed.2d 612 (1974); *Ewing v. NLRB,* 861 F.2d 353, 362 (2d Cir. 1988); *NLRB v. Semco Printing Ctr., Inc.,* 721 F.2d 886, 892 (2d Cir.1983), we find that in these unique circumstances it was within the Board's discretion to apply the community of interests test in effect before *St. Francis II,* and to find that the Hospital's skilled maintenance and engineering employees were an appropriate bargaining unit.

■ Under the prior test, *St. Francis I,* a unit is appropriate only where (i) the employees fall into one of seven enumerated categories (such as skilled maintenance employees); *and* (ii) the employees share a community of interests based on shared job characteristics and common workplace concerns. 265 N.L.R.B. 1025, 1031 (1982). In this case the Hospital's maintenance and engineering employees fall into an enumerated category and share a community of interest. The shared job characteristics found by the ALJ were: common supervision by the engineering supervisor, separation from other employees, comparatively high degree of skill required for the job, wage rates that are distinct from other Hospital employees, and minimal interchange with other employees. The Hospital contends that even under the law as it existed at the time of the election, the unit would not have been appropriate under the community of interests test. The Hospital contends that the unit was inappropriate under *NLRB v. Mercy Hosp. Ass'n,* 606 F.2d 22 (2d Cir. 1979), *cert. denied,* 445 U.S. 971, 100 S.Ct. 1665, 64 L.Ed.2d 248 (1980), in which the Second Circuit found that the maintenance employees of a hospital were not an appropriate unit. However, in that case the Sec-

ond Circuit did not hold that hospital maintenance employees could never be an appropriate unit. The Court merely held that the NLRB must specify in its decision the manner in which its unit determination implements congressional policy to limit proliferation of bargaining units in hospitals. In this case, the ALJ cited the findings made by the NLRB pursuant to its rulemaking that a unit comprised of maintenance employees was appropriate under the 1974 Amendments to the NLRA. Thus, the ALJ gave sufficient weight to Congress' admonition against unit proliferation, and his decision is consistent with *Mercy Hospital.*

■ The further issue to be considered herein is whether the NLRB's remedy of ordering the Hospital to bargain with Local 144 on the basis of a now 15–year–old election was appropriate. The NLRB's orders, unlike the orders of other agencies, are not self-executing; "[t]o put teeth into one of its orders the Board must persuade a court of appeals to enforce the order—in effect, to issue an injunction commanding obedience to the order." *NLRB v. Thill, Inc.,* 980 F.2d 1137, 1142 (7th Cir.1992).

As stated above, in the election in 1979, Local 144 won the right to represent the employees by a margin of 37 to 23. Only 20 employees of the 56 employees currently within the unit were employed at the time of the 1979 election; a majority of the current employees were not employed by the Hospital then and perforce did not vote at the election. The Hospital contends that under the facts and circumstances the proper remedy is to order a new election. The NLRB counters that it has "broad discretion" to devise remedies for unfair labor practices, "subject only to limited judicial review." *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 898–99, 104 S.Ct. 2803, 2812, 81 L.Ed.2d 732 (1984). Furthermore, a bargaining order is the "normal prescription" for remedying a failure to bargain. *NLRB v. Patent Trader, Inc.,* 415 F.2d 190, 204 (2d Cir.1969) (Feinberg, J., concurring in part and dissenting in part; his opinion adopted by *NLRB v. Patent Trader, Inc.,* 426 F.2d 791 (2d Cir.1970) (en banc)). Bargaining orders have been enforced despite long delay and employee

turnover so that an employer does not profit by its wrongful refusal to bargain:

> A union that has been certified by the Board as a bargaining representative after a representation election normally enjoys an irrebuttable presumption of majority status for one year following the certification.... Apparent loss of majority status and delay in certification do not normally constitute "unusual circumstances" [to rebut this presumption].... [Refusing to enforce the bargaining order] gives an employer incentive to disregard its duty to bargain in the hope that over a period of time a union will lose its majority status.

*NLRB v. Star Color Plate Service*, 843 F.2d 1507, 1508–09 (2d Cir.) (citations omitted) (enforcing bargaining order after delay of five years), *cert. denied*, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 58 (1988); *see also Glomac Plastics, Inc. v. NLRB*, 592 F.2d 94, 102 (2d Cir.1979) (enforcing bargaining order after delay of six years). *Star Color Plate Service* also noted that the risk that the bargaining order will force upon the employees a representative that the employees do not want can be ameliorated by the NLRB giving "actual notice to the current employees of their statutory right to petition for a decertification election." 843 F.2d at 1510.

In this case, the delay of 15 years was far longer than the Board delays tolerated in the other cases. Furthermore, our refusal to enforce a bargaining order in these unusual circumstances will not create an incentive for employers to refuse to bargain with recognized unions. In reviewing NLRB orders, this Court must consider the NLRA's concern with "protecting workers from unwanted unions." *Thill*, 980 F.2d at 1142 (denying enforcement of bargaining order where election results were stale and delay caused by NLRB failure to render final decision).

Because of the great delay, the extraordinary Board and employee turnover, the genuine confusion in the law regarding bargaining units in hospitals, and the fact that the majority of the present employees did not vote in the relevant election, this case presents unique circumstances that warrant denial of enforcement of the bargaining order. When this Court, in earlier proceedings between the same parties, held that it was improper for the NLRB to extend comity to a New York State Labor Board's decision to certify a union at the Hospital, we ordered the NLRB to determine if the bargaining unit was appropriate and, if so, to supervise a new election. *Long Island College Hospital v. NLRB*, 566 F.2d 833 (2d Cir.1977), *cert. denied*, 435 U.S. 996, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978). Under all the facts and circumstances present herein, an order requiring a new election is even more appropriate.[7]

### Conclusion

Enforcement in this case is denied, the Board's order is vacated and the case is remanded to require a representation election to be held with reasonably prompt dispatch under Board auspices.

---

**7.** Other unions have sought to represent the Hospital's engineering and maintenance employees. In July 1992, Local 30 Operating Engineers filed a petition for an election to represent this unit. The Board dismissed the petition due to the pendency of this case. The Board's dismissal of Local 30's representation petition should be reconsidered in light of the decision of this Court.